**FILED**
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
Nov 19, 2021
OFFICE OF THE CLERK

# UNITED STATES DISTRICT COURT
## OF
### WESTERN DISTRICT OF ARKANSAS

James E. Smith #121300                                    Plaintiff's

VS.          CASE NO: _____ 21-6152 _____

ARKANSAS Department of Correction                        Defendant's
Sgt. Paulas Settles - Ouachita River Unit.
Barbara A. Holliman - Adm. Review Grievance officer
Jared Byers - Warden - Ouachita River unit
Marshall Dale D. Reed - Chief deputy assistant Director
Mrs. Cryer - Chief legal advisor for ADC.
M. Grisham - Attorney for Inmates.
Jeffery Terry - ADC- Chief Financial officer.
Dexter Payne - Director
April Gibson - ADC- Inmate Grievance Coordinator

## Complaint under the Civil Rights Act 42 U.S.C § 1983

The Plaintiff's James E. Smith #121300, inmate here at the Ouachita River unit Malvern AR, 72104, is Now bringing forth his Claim of ADC State officials Violations of the Plaintiff's Rights to due Process of law of the 5th and 14th Amendments of the U.S. Constitution; to when State officials Committed Fraud and Theft of Property. And ADC state officials misConduct that Cause the Plaintiff's to Suffer Cruel and unusual Punishment in violation of the Eighth Amendment of the U.S. Constitution.

1

I. Previous Lawsuits

A.   Have you begun other lawSuits in State or federal Court dealing with the Same facts involved this **action**?

Yes _____    No __✓__

II.   Place of Present Confinement: <u>OUAChita River unit - P.O.Box</u>

<u>1630 Malvern, ARk, 72104-1475</u>

III.   There is a written Prisoner grievance procedure in the Arkansas De-Partment of Correction and in Your CountY Jail. Failure to Complete the grievance procedure may affect your Case in federal Court.

A.   Did You Present the facts relating to your Complaint in the State or County written Prisoner grievance procedure?

Yes ✓    NO _____    - See Attach Copies of

my written grievances and responses to the Completion of my

grievance Procedure. grievance - OR-21-00555

2

# IV. Parties

{ In item A below, Place Your Name in the first blank and Place Your address in the second blank. }.

A. Your full Name: James Elwood Smith #121300
   Address:       Ouachita River Unit P.O. Box 1630 Malvern Ark 72104

{ In Item B below, Place the full name of the defendant in the first blank, his official Position in the Second blank, his Place of Employment in the third blank, and his address in the fourth blank. }.

Do Not list witnesses.

You may not name the Jail as a defendant. The Jail is a building and Cannot be Sued.

B. Read Carefully and fill out all information Sought.

1. Defendant #1.

Full Name: Paulas Settles
Position : Sergeant
Place of Employment: Ouachita River Unit
Address: Malvern Ark P.O. Box 1630 = 72104-1475

3

2. Defendant #2.

Full Name: Barbara A Holliman
Position: Adm-Review grievance officer
Place of Employment: Ouachita River Unit
Address: Malvern Ark P.O. Box 1630 - 72104-1475

3. Defendant #3.

Full Name: Jared Byers
Position: Warden-
Place of Employment: Ouachita River Unit-ADC
Address: Malvern Ark, P.O. Box 1630 - 72104-1475

4. Defendant 4.

Full Name: Marshall Dale D. Reed
Position: Chief deputy Director
Place of Employment: Arkansas Division of Correction
Address: 6814 Princeton Pike Pine Bluff, AR 71602-9411

5. Defendant 5.

Full Name: Mrs. Cryer - Chief legal advisor for ADC.
Position: Chief legal advisor for ADC
Place of Employment: Arkansas Department of Correction
Address: P.O. Box 8707 Pine Bluff, Arkansas 71611

4

b. Defendant #6.

Full Name: M. Grisham
Position : Attorney for Inmates
Place of Employment: Arkansas Board of Corrections Compliance Division
Address : Post office Box 20500 White Hall Arkansas 71612-0550

Defendant #7

Full Name: Jeffery Jerry
POSITION : ADC Chief Financial Officer
Place of Employment: Arkansas Department of Correction
Address: P.O. 8707 Pine Bluff, Arkansas 71611

Defendant #8

Full Name : Dexter Payne
POSITION : ADC Director
Place of Employment: Arkansas Division of Correction
Address : 6814 Princeton Pike Pine Bluff, AR. 71602-9411

Defendant #9

Full Name : April Gibson
Position: Inmate Grievance Coordinator /l
Place of Employment: Central office 6814 Princeton Pike
Address: Pine Bluff, Arkansas 71602

5

V. I am Serving a 40 years Sentence as a result of a Judgment of Conviction I was Convicted on August 9-2001 for two allege Counts of Rape by a Jury:

## VI. STATEMENT OF Claim:

ADC and ADC State officials violated the Plaintiff's 5th 8th and 14th amendments of the U.S. Constitution. To when ADC State officials Relieded upon ACT 1110 of 2021 and upon ADC Policy AD 16-44 inmate liens Procedure. A- Paragraphs -9-11- and -12- To unlawfully enter and take funds from the Plaintiff's Inmate Trust fund banking Account on 4-7-2021. ADC and ADC State officials action Constitute Fraud and Theft of Property. Therefore Plaintiff's has brought fort his Claim against ADC and ADC State officials in good faith.

### FACT(s) ADC STATE OFFicials violated Plaintiff's Grievance Procedure Rights:

At the bottom Portion of the unit level Grievance form (Attachment-{1} It gives details to how each Page of the unit Level grievance. Should be distributed. It States that the Yellow and Pink Copy is the Inmate Receipts: The Blue Copy goes to the Grievance officer for his or her Record: The ORiginal Copy that is the White Copy - goes to the Inmate after Completion of. Step one and Step Two: For the unit Level Grievance (Attachment I document {see Grievance Exhibits:

(a). On 7-1-2021, Sergent. Paulas Settles, was the acting Problem Solver. And upon that exact Same day Sergent. Settles, and I the Plaintiff's both Signed the --- grievance inorder to get Step-{1} of the grievance. Started. Sgt. Settles, gave me the Yellow and Pink Copy of the grievance. and took the original. White Copy and the blue Copy with her. However "Still unto this day I have not receive the original. white Copy back from Sgt. Settles. Sgt. Settles, did not Return back to the Plaintiff's to resolve the Plaintiff's grievance Problem at Step {1}. And did Not Provide the Plaintiff's with the white Copy to go to Step (2).

Therefore Sgt. Slettles, interfered with the Plaintiff's Grievance Procedure to when She Sgt. Settles, fail to Return the white Copy of the grievance back to the Plaintiff's for Step•2•; Settles, Violated ADC• AD19•34• Inmate grievance -- Procedure•k• Paragra-ph•3• §That States that: once an inmate initiates the grievance Process, the Process Shall be followed through all Stages without interference by administrators or employees of the division.

And the fact is that because Sgt. Settles had refuse to Return the white Copy back to the Plaintiff's, She Sgt. Settles had Violated ADC. AD-19-34 inmate grievance Procedure E•Paragraph •§4•a•§ that States that: The Problem Solver will meet with the inmate within three working days to resolve the issue• A•ADC•AR• has been Provided to You; See ADC• Administrative Directive:

**b.** Therefore Sgt. Settles, interference and refusal to meet and return the original Copy of the grievance back to the Plaintiff's to resolve the grievance issue at Step "I's and Not allow for Plaintiff's to go to Step II; had denied the Plaintiff's the Rights to due Process of the law of the 14th amendment of the U.S. Constitution. Sgt. Settles action was Cruel and unusual Punishment in violation of the eight Amendment of the U.S. Constitution. Therefore for the above Causes and for the Emotional distress and mental Anguish Caused by Sgt. Settles, The Plaintiff's Therefore Pray for this Court to grant the Plaintiff's the right to Sue Sgt. settles in her §settles§ official and Personal Capacity for the Sum of $ 20,000.00 dollars for InJunctive Relief. Due to Violation of ADC Policy AD-19-34 - Procedure •k• paragraph •3• and Procedure •E•Paragraph •4•§a§.

**C.** The Plaintiff's also Pray for this Court to grant him the Plaintiff's the right to Sue Sgt. P. Settles in her official and personal Capacity for the Sum of $25,000.00 dollars for Compensatory Damages due to Constitutional Violations.

7

D. Wherefore because Sgt. Settles, had knowingly and deliberately denied the Plaintiff's A fair grievance Procedure and for her Sgt. Settles wrongdoings that denied the Plaintiff's Due Process rights of the 14th Amendment of the U.S. Constitution. The Plaintiff's therefore Prays that this honorable District Court to Grant the Plaintiff's the rights to Sue Sgt. Settles, in her official and Personal Capacity for the Sum of $25,000.00 dollars for PuniTive Damage; due to Sgt. Settles, wrongdoings and Constitutional Violations.

**FACT-2:** On 7/14/2021, Adm review officer Barbara Holliman, Stated upon the face of the Acknowledgment or reTection of unit level grievance-Attachment II dated 7/14/2021, that She Holliman have received the Plaintiff's grievance date 07/01/2021 on 07/14/2021. Ms. Holliman also Stated that She had given the Plaintiff's grievance to the warden, and that the Plaintiff's Should receive Communication from the warden regarding the Plaintiff's grievance by 08/11/2021. {For document} Acknowledgment grievance Attachment II = See grievance Exhibits:

Document: Warden/Center Supervisor's Decision Attachment III Reveals that;

a. Warden Byers, Signed the Warden/Center Supervisor's Decision Attachment III - document {on 7/30/2021. And see Grievance Exhibits for Attachment III

b. On 8/9/2021, doing mail Call at 6:46, P.M. Corporal. Matthew Armstrong-Signed dated and Place the time upon the Above left hand Conner on the Back of the Warden/Center Supervisor's Decision Attachment III (document) before given it to the Plaintiff's at mail Call. Corporal. Armstrong will testify to the fact that the Plaintiff's — received the Warden Byers Decision on 8/9/2021. For document Attachment III See Grievance Exhibits:

8

c. The evidence Proves that Warden Byers, Signed his Warden decision to Plaintiff's Grievance = On 7-30-2021 : And the evidence also Proves that the Plaintiff's Received warden's Byers, decision on 8/9/2021 :

d. Therefore from the date that warden Byers, Signed his warden decision and from the date that the Plaintiff's Received the warden decision, Reveals that after warden Byers, had Signed his Warden Decision on 7-30-2021, that it took -- approx: eleven (11) days before the Plaintiff's had received warden Byers decision in the mail.

e. The fact is that within those Eleven (11) days that five of those (11) days was five (5) working days that had passed by before the Plaintiff's Received warden Deision.

f. ADC AD 19-34 Inmate Grievance Procedure. = F= Paragraph= 9= Reveals that : If an inmate has not received a response to his or her Unit level Grievance within the allotted time frame as stated on the Acknowledgement form Attachment 11 } Then that inmate has No later Than (5) Five Working days to Appeal to the Chief Deputy Assistant Director.

G. Therefore because warden Byers, had Signed his warden Decision on 7-30-21 and held it Eleven {11} days from the Plaintiff's after he warden Byers, had Sign his warden Decision. Had made it impossible for the Plaintiff's to have File his appeal to the Deputy Chief assistant Director in a Timely manner.

H. The fact is that Barbara Holliman, knew that Warden Byers had denied the Plaintiff's a Timely Appeal to the Deputy Chief assistant Director. Because accordingly to ADC Policy AD 19-34 inmate Grievance Procedure. F. Paragraph 8= States that the grievance officer will meet with the Warden for the appropriate. response to the inmate grievance. Therefore She Holliman knew

that Warden Byers, had signed his Warden decision on 7-30-2021, She Holliman knew that Warden Byers, had withheld his Warden Decision Eleven 11 days before giving his Warden Decision to the Plaintiff's. Therefore she, Barbara Holliman, was an Accessory to Warden Byers, retaliation against the Plaintiff's for using the Grievance Procedure.

I. Therefore A. Holliman, had led the Plaintiff's to believe that he would Receive the Warden Decision in August or no later than 8/11/2021. However on 8/8/2021, The Plaintiff's did not know that Warden Byers had signed the Warden Decision on 7/30/2021. Therefore because A. Holliman, had led the Plaintiff's to believe that he the Plaintiff's would Receive the Warden Decision on 8/11/2021 and the fact that the Warden Signed his Warden decision on 7/30/2021; and the Plaintiff's did not know on 8/8/2021 that the Warden had Signed his Warden Decision on 7/30/2021, And the fact that the Plaintiff's had Received the Warden Decision on 8/9/2021; Clearly Reveals that the Plaintiff's Could Not file a Timely Appeal;

J. A. Holliman, interfered with the Plaintiff's grievance procedure to when she (Holliman) became an Accessory to Warden Byers wrongdoing to retaliated against the Plaintiff's for the use of the grievance procedure. Therefore Barbara A. Holliman and Warden Byers, is guilty of interfering with the Plaintiff's grievance process. Both Warden Byers and Barbara Holliman have violated ADC AD 19-34 Inmate grievance Procedure F= Paragraph = 9= §§ AD 19-34 Inmate grievance Procedure. K= Paragraphs = 1=2=and=3= §.

k. The Plaintiff's States that because Barbara Holliman, interfered with the Plaintiff's grievance procedure by becoming an accessory to Warden Byers wrong doing to Retaliated against the Plaintiff's because of the

Plaintiff's use of the grievance Procedure: The Plaintiff's then therefore Prays that this honorable District Court Grant The Plaintiff's the right to Sue Barbara Holliman, in her ₹ Holliman ₹ Official and Personal Capacity for the Sum of $30,000.00 dollars for **Injunctive Relief** due to Holliman Violation of **ADC Grievance Policy**; and **Constitutional Violation.**

L. **The Plaintiff's** also States that Ms. Holliman knowingly and deliberately had became an **Accessory** to warden Byers, wrongdoing to **Retaliated** against the Plaintiff's because of Plaintiff's **use of** the grievance Procedure; Ms. Holliman, interference and becoming an accessory to warden Byers wrong doing "had denied the Plaintiff's Due Process of the 14ᵗʰ Amendment of the U.S. Constitution. Ms. Holliman, Action also Constitute Ms. Holliman to have been Cruel and unusual Punishment in violation of the Eighth Amendment of the U.S. Constitution. Therefore the Plaintiff's Prays that this honorable District Court to grant the Plaintiff's the right **to Sue** Barbara Holliman, in her official and Personal Capacity for the Sum of $30,000.00 dollars for **Compensatory Damages** Due to Ms. Holliman, Constitutional Violations.

M. Wherefore because Barbara A. Holliman, had knowingly and deliberately became an accessory to warden Byers, wrong doing, and Retaliation against the Plaintiff's. Therefore the Plaintiff's pray that this honorable District Court grant the Plaintiff's the Rights to **Sue Ms. Holliman**, in her official and personal Capacity for the Sum of $30,000.00 for Punitive Damage due to Holliman, wrongdoings and Constitutional **Violations.**

## FACT: 3 : .

(a). In fact = 2 = of this Civil Complaint It has been demonstrated that warden Byers, had retaliated against the Plaintiff's because of Plaintiff's use of the Grievance Procedure; Warden Byers, retaliation against the Plaintiff's Constitute, warden Byers, to have denied the Plaintiff's the Right to Due Process when it Comes to Plaintiff's having a fair grievance Procedure process. Warden Byers, violation of ADC Policy AD 19-34 inmate grievance Procedure = F = Paragraph = 9 = § and § violation of ADC Policy AD 19-34 inmate grievance Procedure = k = Paragraphs = 1 = 2 = and -3 = §, had Cause the Plaintiff's Appeal to the Chief Deputy Assistant Director to be untimely;

b. There fore "the fact is that after he warden Byers, had Signed his Warden = Byers, Decision - on 7-30-2021 and then withheld it from the Plaintiff's for eleven § 11 § days before giving his § warden Byers § Decision to the Plaintiff's. on 8-9-2021. Do in fact Constitute Warden Byers, Action to be Cruel and unusual Punishment in violation of the eight Amendment of the U.S. Constitution. Warden Byers, Action also had denied the Plaintiff's the Right to due Process of the law in Violation of the 14th Amendment of the U.S. Constitution. There fore "I the Plaintiff's do hereby Pray that this Court will Grant the Plaintiff's the Rights to Sue Warden Jared Byers, in his official and Personal Capacity for the Sum of $30,000.00 for Injunctive Relief due to Warden Byers, Violation of ADC grievance Procedures and that of his warden Byers, Constitutional Violation.

c. Warden Jared Byers, Mis Conduct to with hold his Warden Decision from the Plaintiff's from 7/30/2021 to 8/9/2021, had Cause the Plaintiff's Appeal to the Chief Deputy assistant Director to be UnTimely.

Therefore not only was it Cruel and unusual Punishment inviolation of the Eighth Amendment of the U.S. Constitution . But it also Violated –– Plaintiff's Due Process Rights of the 14th Amendment of the U.S. Constitution. Therefore I the Plaintiff's Prays that this Court grant the Plaintiff's the Right to Sue warden Byers, in his official and Personal Capacity for the Sum of $30,000.00 dollars for Compensatory Damages, Due to warden Byers, Constitutional Violation. and for all other Mis Conduct by warden Byers.

d.  where fore because of warden Byers, Retaliation against the Plaintiff's for use of the grievance Procedure; And because of warden Byers, Violation of ADC Policy–AD 19-34 inmate grievance Procedures - F - Paragraph - 9 - 3 and 8 k - Paragraphs - 1 - 2 - and - 3 - And because of warden Byers, Mis Conduct and Wrong doings the Plaintiff's Prays that this Court grant the Plaintiff's the Right to Sue Warden Byers, in his official and Personal Capacity for The Sum of $30,000.00 dollars for Punitive Damage-Due to warden Byers, wrong doings and Constitutional Violations.

## FACT 4.  Chief Deputy Director, Marshall Dale Reed –––. Rejected The Plaintiff's APPEAL                        :

## Failing To Investigate :

on the Acknowledgement of the grievance Appeal Attachment V - Reveals that Chief Deputy director only look at the date that warden Jared Byers, Signed upon the face of the warden / Center Supervisor's Decision Attachment III document - Chief deputy director made his decision by Saying that the time allowed for Appeal has Expired. For Acknowledge ment of grievance Appeal or Rejection of Appeal Attachment V (See Grievance Exhibits)

13

a. The unit level grievance form Attachment = {1} OR= 21-00 555 - dated 7-1-21{ Reveals that the grievance office received the Plaintiff's grievance on-July 08-2021. For Proof of that date to when the grievance office Say's She received Plaintiff's unit level grievance form Attachment = {1} = OR=21-00555-dated 7-1-21-1{ See Grievance Exhibits = {for attachment {1}.

b. Now upon the face of the Acknowledgment of unit level grievance Attachment= {11}. that reveals that Barbara Holliman, Adm Review officer States that She{Holliman, Received the Plaintiff's Grievance. = OR=21-00555=dated 7-1-21{ upon this date of 7/14/2021 ; for proof to when Ms. Holliman, States to When She Holliman, Received Plaintiff's grievance = OR- 21-00 555 ; See grievance Exhibits = Attach-ment ll

C. The fact is which above date is tRue ? did She Holliman, Receive the Plaintiff's Grievance = OR= 21=00555= On=July 8-2021 {or{was it=On= 7-14-2021=

d. The unit level grievance form Attachment= I= OR= 21-00-555= dated 7-1-21= Reveals upon it's face that the Chief deputy director, Marshall Reed, Stamped the date of August 17-2021, as to the date to when he {Marshall Reed, had received the Plaintiff's unit level grievance Attachement (1) =OR=21=00555= See Grievance Exhibit=S {0} for Attachment {I {on} The date of 8-17-21=

e. And upon the face of the Rejection of Appeal Attachment {v{ reveals that Chief Deputy Director, Marshall, Dale.D. Reed, Stated that he {Reed} Received the Plaintiff's grievance Attachment=I= OR-21-00555 dated 7/01/2021 on This day of 8-17-2021= {See grievance Exhibits {{ for date Receive by {Marshall Reed = Attachment {V{

f. The warden/Center Supervisor's Decision, Attachment = {III} = reveals that Chief deputy Director {Marshall Reed} received the Warden/Center Supervisor's Decision Attachment {III}= on August 17-2021 =). The Chief deputy Director {marshall Reed, Stamped the date of August 17-2021 upon the face of the warden/center Supervisors Decision= Attachment=III= See Grievance Exhibits { for Attachment ={III}.

G. Therefore Chief deputy Director, Marshall Reed admits that he had the warden/Center Supervisors Decision Attachment=III = within his Reed Possesion on 8-17-2021. And therefore He Deputy Director, Reed was aware That:

1. That Warden Byers had Signed the warden/Center Supervisor's Decision Attachment= III= on = 7-30/2021

2. Chief deputy, Reed knew that Corporal Armstrong, had Said that he gave the Plaintiff's Warden, Byers, Decision to the Plaintiff's grievance OR -21-00555= on 8-9-2021: On the Back Side of the warden/center Supervisor's Decision= Attachment=III= Reveals at the Top Left hand Corner that Corporal Armstrong- Signed his Name the date and the time to when he Corporal Armstrong gave the Plaintiff's the Warden Byers' Decision at mail Call. See Attachment III (grievance Exhibits)

3. Chief deputy Director, Marshall Reed, knew from the Acknowledgment or= Rejection Of unit level grievance #OR=21=00555= Attachment= {II} That Barbara Holliman, the adm Review officer= had led the Plaintiff's to believe that he the Plaintiff's would be receiving the warden decision On 8-11-2021.

4. The fact is that Warden Byers, Signed his warden decision attachment
{ III } on 7/30/2021 §. on 8-9-2021, doing mail Call at 6:46 P.m CPL.
Matthew Armstrong gave the Plaintiff's Warden Byers, Decision; Therefore
accordingly to the date that Warden Byers, Signed his-Warden decision and
accordingly to the date that Plaintiff's received warden Byers, decision · · ·
Reveals that Warden Byers, had withheld his-Warden decision from the
Plaintiff's eleven { 11 } days before given → His { warden } Decision to the Plaintiff's.
Therefore on 8-17-2021, Chief deputy director, Marshall Reed, knew
that warden Byers was the Cause for Plaintiff's grievance Appeal to be unTimely.

5. Therefore Chief deputy Directory, Marshall Reed was aware of Warden
Byers, Mis Conduct to Yetaliate against the Plaintiff's for use of the --
grievance Procedure; Chief deputy Directory, Reed had refuse to look at the
fact of the Plaintiff's grievance Complaint · And therefore Refuse to investigate
and did not forwarded the grievance issue to the Internal Affairs for --
further Yeview with all relevant documentation·Chief Deputy Director,
Marshall Reed Violated; ADC AD 19-34 Inmate Grievance Procedure- K-
Paragraphs 1-2-3-and-4; Chief-deputy Director, Reed Rule upon the face
of the Rejection of Appeal-Attachment (V) for Director Deputy Reed
Ruling See §Grievance Exhibits § Chief Deputy Director; State that
the time allowed for Appeal has Expired; see Grievance Exhibits; for
Acknowledgement of Grievance Appeal or Rejection of Appeal -Attachment {V }.

6. Chief deputy director, Marshall Reed, mis Conduct to Cover up for
Warden Byers, wrong doing- do Constitute Chief deputy director-
Marshall Reed to be an Accessory to warden Byer, yetaliation against
the Plaintiff's -For use of the Grievance Procedure; Chief deputy
Director, manshall Reed, Mis Conduct to Cover up for warden Byers, wrong
doing do-Constitute Chief Deputy Director, Reed Action to be Cruel and

unusual Punishment inviolation of the eighth Amendment of the U.S. Constitution, And Chief deputy Director, Reed Mis Conduct denied the Plaintiff's the rights to Due Process of law inviolation of the 14th Amendment of the U.S Constitution.

7.  I the Plaintiff's James E. Smith, Pray for this honorable District Court to grant the Plaintiff's the rights to Sue Chief deputy Director, Marshall Dale D. Reed in his official and Personal Capacity for the Sum of $30,000.00 dollars for InJunctive Relief, due to Chief deputy director, Reed Violation of —— Plaintiff's Grievance Procedures and Constitutional Violation.

8.  I the Plaintiff's also pray that this honorable District Court to grant the Plaintiff's the rights to Sue Chief deputy Director, Marshall Reed in his - official and Personal Capacity for the Sum of $30,000.00 dollars for Compen Satory Damages due to Chief deputy Director, Reed, Constitutional Violations and Mis Conduct to Cover up other State officials Wrongdoing And because of Chief deputy Director, Mis Conduct and Abuse of Authority.

9.  Wherefore because of Chief deputy Director, Marshall Reed, Cover up for-- warden Byers, retaliation against the Plaintiff's use of the grievance Procedure and for the Plaintiff's Emotional Distress and for all other Causes, I Pray for this honorable District Court to grant the Plaintiff's the Rights to Sue Chief deputy Director, Marshall Reed, in his official and Personal Capacity for the Sum of $30,000.00 dollars for Punitive Damage - Due to Chief deputy Director MarShall Dale D. Reed, wrong-doing and for Constitutional --- Violations. MarShall Reed, knowingly and deliberately Denied the Plaintiff's a Fair Appeal.

10. _I Plaintiff's, James E. Smith, Allege and State that on 8-10-2021, Inorder to Exhaust all of my administrative Remdies as to all defendants at All levels of the grievance Procedure I mail out to the Chief Deputy Assistant Director: BY Legal Mail;_

   a. <u>Unit level Grievance Form {Attachment I) Grv. OR 21-00555</u>
   b. <u>Acknowledgment or Rejection of unit level Grievance · Attachment II) OR-21-00555)</u>
   c. <u>Warden/Center Supervisor's Decision · Attachment III} Grv.# OR-21-000555</u>
   d. <u>on Back Side of Warden/Center Supervisor's Decision · Attachment III) Cpl. Matthew Armstrong - Signature at the Top left Conner - Month, date and time:</u>

11. _On 8-10-2021 - between 1:am To 4:Am - I took my legal mail to Lt. Chad Sorgs for Lt. Chad Sorgs to Seal - Sign and mail my legal mail out to Chief deputy Assistant Director: The films from 3 and 4-Chow Halls Cameras will Support that **Fact. Lt. Chad Sorgs** was the **last one** that I Seen to handle my legal mail._

12. _The Plaintiff's States that he has fully Exhausted all of his administrative Remdies as to all defendants at all levels of the grievance procedure:_

**FACT=5:** <u>ADC. STATE OFFICIAls USE OF AD 16-44 Inmate-liens Policy Procedures {A} Paragra.Pbs = 9 = 11 = and = 12 · And ADC. STATE OFFICIAls USE OF ACT = 1110 of 2021 = Cause a wrong To The Plain Tiff's :</u>

1. On 04/07/2021, Plaintiff's Stimulus Check for the amount of $1,400.00 dollars was deposit into the Plaintiff's Inmate Trust Fund Banking account at the Centralized Banking P.O.Box 8908 Pine Bluff, AR 71611. See -- Exhibits {1}.

2. On 4/7/2021. ADC Sent A lien to the Centralized Banking Claiming that the Plaintiff's Owed them ADC: {a}. Medical Co-Pay lien of $99.89 {b}. Postage Charge lien of $799.61 {c}. Legal Copier fees $215.56 {See Exhibits-1 and 2 }}.

(d). ADC Does Not have the Authority to Place a lien on the Plaintiff's Bank Account: ADC would Need a Court order to have a lien Put on an inmate Account. See Exhibits {5}. Therefore the Plaintiff's Prays for this Court to Compel ADC or the Centralized Banking to Produce the Court order that gave an Court order for a lien to be Put on the Plaintiff's Banking Account on 4-7-2021 To Pay ADC Liens for (a). Medical Co-Pay Lien of $99.89 (b). Postage Charge lien of $799.61-and- {C}. Legal Copier fees $215.56 .

{e}. Warden Byers, Stated that only by Court document order Can ADC Enforce a lien on the Plaintiff's Account. And only by Court order that a lien Can be Placed on an inmates Account. See Exhibits {5}.

{f}. ADC-AD 16-44 Inmate liens Policy Procedures Signed by Wendy Kelly effective Date 9-23-2016 is Not State Law: See Exhibits {9}.

{G}. The State Application-order Granting leave To Proceed In Forma-Pauperis-Clearly States that the Plaintiff's Do Not owe ADC Postage Charge of $799.61 and Do Not owe ADC Legal Copier fees of $215.56: The ADC-AD 16-44 Inmate Liens Policy Procedures violates State law.

H. under Arkansas State law a State Application such as an Order granting leave to proceed In Forma Pauperis; Once the order has been Signed by a Judge The Order will **become State law.** The Order Granting leave To Proceed Informa Pauperis clearly States:

1. That the Clerk of the Circuit Court of ___ County Shall receive and file any Necessary forms or Pleadings incident to Plaintiff's action without requiring the Payment of fees or Costs.

2. That the Sheriff's of the Several Counties of the State of Arkansas Shall Service writs or Processes incident to Plaintiff's action without requiring the Payment of fees or Costs.

3. That No other office Shall require of the Plaintiff's any fees or Costs incident to Plaintiff's Action.

I. There is No Court order to Support ADC liens to have been Placed on the Plaintiff's Banking Account. And there was No Court order given to ADC to enforce a Lien. Therefore ADC is Guilty of Fraud and Theft of Property.

**FACT 6**

## ACT 1110 of 2021. WAS ENACTED BY THE GENERAL --- Assembly of THE STATE OF ARKANSAS on MAY 3, 2021 ;

1. warden Byers, admitted that State officials used Act 1110 of 2021, to enter and take funds from the Plaintiff's trust fund banking account on **04/07/21**. See Grievance Exhibits ; for warden/Center Supervisor's Decision - Grievance #OR-21-00555 - Attachment **IIII** ; Warden Byers, knew that ACT 1110 of 2021 was Not law on 04/07/2021. Warden Byers, knew that ADC State officials use of ACT-1110 of 2021, on 4-7-2021 was an act of Fraud.

20

2. The Warden/Center-Supervisor's Decision {Document} Attachment {III} grievance #OR-21-00555-reveals that Chief deputy Director, knew on August 17-2021, that ADC State officials use Act 1110 of 2021 to illegally Enter and unlawfully took funds from the Plaintiff's Trust fund banking Account on 04/07/2021. For Proof that Chief deputy Director, Marshall Reed knew {See Document} The Warden/Center Supervisor's Decision-Attachment {III} and See {Document} The Acknowledgement of Grievance Appeal or Rejection of Appeal-Attachment {V}. Both documents dated 8-17-21. See Grievance Exhibits {

3. On 6/21/2021, Mrs. Cryer Chief legal Advisor for ADC, Advised-Chief deputy Assistant Director's Marshall Reed, That Pursuant to Act 1110 of 2021 that inmate banking is unable to deposit the funds into inmate's account at this time. However" on 4/7/2021, Mrs. Cryer Chief legal **Advisor** for ADC, **fail** to advise Chief deputy director's marshall Reed, That on 4-7-2021, ACT-1110 of 2021, was NOT Law. And That ADC Cannot use or Enforce Act 1110 of 2021 on 4-7-2021. See Exhibit S-for {Document} Chief Deputy Assistant Director Decision, Attachment (VI) {Exhibit 6}

The fact is that When it Came to Not Violating the Plaintiff's rights to due Process of the 14th Amendment of the U.S. Constitution. And when it Came to Plaintiff's Rights to be free from Cruel and unusual Punishment in-violation of the eighth Amendment of the U.S. Constitution. Mrs. Cryer, Chief legal Advisor for ADC, had knowingly and deliberately allowed for ADC State officials to enforce ACT-1110 of 2021, upon the Plaintiff's Trust fund banking Account on 4-7-2021; Mrs. Cryer, knew that Act-1110 of 2021, became law on 5-3-2021, Not on 4-7-2021. See Exhibits-{Exhibit {3}. Mrs. Cryer, Should have advise ADC State officials that ACT-1110 of 2021 would be Come law on 5-3-2021. It was mrs. Cryer, Responsibility to tell ADC State officials about the date. that Act 1110 of 2021 Came into Existence as to when it actually Came into Law. Mrs. Cryer-is the Chief legal Advisor for ADC. See Exhibits {Exhibit {6}

21

Therefore "on 04/07/2021, Mrs. Cryer, was aware that Act 1110 of 2021 was Not law: On 04/07/2021, Mrs. Cryer, knew that ADC use of ACT-1110 of 2021 to enter and take funds from the Plaintiff's Trust fund banking account - was Fraud and Theft of Property. Mrs. Cryer, Chief legal advisor had be- came an Accessory - before and After the fact to ADC-State officials Fraud and Theft of Property. Mrs. Cryer, Misconduct to Cover up the Fraud and Theft of Property committed by ADC State officials, denied the Plaintiff's due process of law in- violation of the 14th Amendment of the U.S. Constitution. And was Cruel and unusual Punishment in violation of the eighth Amendment of the U.S. Constitution. Mrs. Cryers, Misconduct, to Cover up ADC State officials Retaliation, make her an accessory to Retaliation - in violation of ADC AD 19-34 Inmates grievance Procedure =K= paragraph { V }.

I the Plaintiff's therefore pray for this honorable District Court to grant the Plaintiff's the right to Sue Mrs. Cryers, in her officials and Personal Capacity for the Sum of $30,000.00 dollars for Injunctive Relief, due to Mrs. Cryers, Violation of ADC grievance Policy and Constitution violation.

The Plaintiff's Prays that this honorable District Court to grant the Plaintiff's the right to Sue Mrs. Cryers, in her officials and Personal Capacity for the Sum of $30,000.00 dollars for Compensatory Damages due to Mrs. Cryers Misconduct to Cover up for State officials wrongdoings and for the Emotional Distress and all other Constitutional violations.

Wherefore I Pray for this Court to grant the Plaintiff's the rights to Sue Mrs. Cryers, in her officials and Personal Capacity for the Sum of $30,000.00 dollars for Punitive Damage, due to Mrs. Cryers, wrongdoing for failure to advise State ADC officials, that their use of ACT-1110 of 2021, was Fraud and Theft of Property; And Mrs. Cryers, knowingly and deliberately denied the Plaintiff's due process Rights of the 14th Amendment of the U.S. Const?

22

**FACT #7:** M. Grisham, Attorney for inmates, was an accessory to Fraud and theft of Property after the fact to whem M. Grisham, knowingly and deliberately-Cover up for ADC State officials fraudulent use of Act-1110 of 2021 that took place on 04/07/2021. M. Grisham, Attorney for Inmates knew that on 4-07/2021, that Act-1110 of 2021 was Not Law. M. Grisham knew that Act-1110 of 2021, was Enacted on 5-3-2021. See Exhibits § Exhibit 3. M. Grisham, knew that No-Court had given ADC a Court-order to Enforce A lien on the Plaintiff's Trust fund banking Account-on 04/07/2021. Therefore M. Grisham was very much aware of the fact that ADC State officials had Committed Fraud and Theft of Property. M. Grisham, failure or Refusal to Expose ADC State officials Fraud and Theft of property, denied the Plaintiff's Due Process of law in violation of the 14th Amendment of the U.S. Constitution. M. Grisham, Misconduct to Cover up ADC State officials wrongdoings was Cruel and unusual Punishment in violation of the Eighth Amendment of the U.S. Constitution.

Therefore, I the Plaintiff's Prays that this honorable Court will grant the Plaintiff's the rights to Sue M. Grisham, in her officials and Personal Capacity for the Sum of $30,000.00 dollars for Injunctive Relief, due to being an accessory to a Crime of Fraud and Theft of Property by Not Exposing ADC State officials for their Fraud and Theft of Property, and Constitutional Violation.

The Plaintiff's Prays that this Court grant the Plaintiff's the Rights to Sue M. Grisham, in Grisham, official and personal Capacity for the Sum of $30,000.00 dollars for Compen. Satory Damages due to M. Grisham, accessory to Cover up ADC State officials Wrong doings and failure to provide the Plaintiff's with the Effective assistant of Counsel Required by the Sixth (6th) Amendment of the U.S. Constitution. And for Due process violation of the 14th Amendment of the U.S. Constitution and for The Emotional Distress and other wrong doings.

23

Wherefore, I the Plaintiff's pray for this honorable District Court to grant the Plaintiff's the rights to Sue M. Grisham, in Grisham official and Personal Capacity for the Sum of $30,000.00 for Punitive Damage, due to M. Grisham, wrong doing to Cover up State officials of ADC Fraudulent use of Act=1110 of 2021, on 4-7-2021. And for Constitutional Violations and for the Emotional Distress and for the failure to Provide the Plaintiff's with proper Counsel.

## FACT= 8

On 4/7/2021, Jefferson Jerry=ADC=Chief Financial, knew that No Court= Order a lien to be Placed on the Plaintiff's Trust fund banking Account. On 4/7/2021, Jefferson knew that No=Court gave him Jefferry a Court order to withdraw funds from the Plaintiff's Trust fund banking account. Jefferson knew that to use Act=1110 of 2021, to enter and withdraw funds from the Plaintiff's Trust fund banking account on 04/07/2021, would be Fraud and Theft of property; Jefferson, knew that ADC State officials unlawful Placed and enforced a Lien on the Plaintiff's Trust Fund banking account; on 4/7/2021. And therefore Jefferson Jerry, became an accessory to ADC State officials Fraud and Theft of Property. And as Warden Byers, had Stated that ADC does not Authorize Liens: See Exhibits §Exhibit=5

The Plaintiff's States that after the fact Jefferson Jerry became an Accessory to ADC Fraud and theft of Property. And therefore had denied the Plaintiff's due Process of Law in violation of the 14th Amendment of the U.S. Constitution. And therefore the Plaintiff's Prays for this Court to grant the Plaintiff's the right to Sue Jefferson Jerry in his official and Personal Capacity for the Sum of $30,000.00 dollars for Inductive Relief, due to being an accessory to a Crime of Fraud and Theft of Property. And for the Emotional Distress and for Wrong doing and Constitutional violation.

The Plaintiff's prays for this Court to grant the Plaintiff's the rights to Sue Jefferson Jerry, in his official and Personal Capacity for the Sum of $30,000.00 dollars for **Compensatory Damages** due to Jefferson being an accessory to fraud and theft of Property and Constitutional Violations and misconduct, and wrong doing.

Wherefore because of Jefferson Jerry, being an accessory to ADC State officials fraud and theft of Property and because of his wrongdoing and Constitutional Violations. I therefore Pray for this Court to grant the Plaintiff's the rights to Sue Jeffery Jerry in his official and Personal Capacity for the Sum of $30,000.00 dollars for **Punitive Damage**.

# FACT 9:

Dexter PAYNE- Director-Of the Arkansas Department of Correction and Chief Deputy assistant Director, Marshall Dale D. Reed and Warden-Byers, All upheld the Fraud and Theft of Property that took Place on 04/07/2021.

1. Dexter Payne, knew that No Court gave an order for a lien To be Place on the Plaintiff's Trust fund banking account on 4/7/2021.

2. Dexter PAYNE, knew that Act-1110 of 2021, was enacted on 5-3-2021.

3. Dexter PAYNE, knew that Act 1110 of 2021 was Not law on 4/7/2021

4. Dexter Payne, was aware of ADC-State officials Fraudulent use of Act-1110 of 2021, to enter and withdraw funds from the Plaintiff's Trust fund banking Account that tookPlace on 04/07/2021.

25

## The Division of Corrections gives the following Statements as an Excuse:

The division of Correction has to abide by the guide lines of Act-1110 of 2021, which makes this or any issue beyond the Control of the Department of Correction. The fact is how are you going to follow the guide line of an Act-1110 of 2021 that did not exist on 4-07-2021. See Exhibits for Exhibit-7 and Exhibits - for Exhibit {3}

Dexter Payne-Director and over Seer-has a duty to keep Control and be fair to his employees and to the inmates. Dexter payne Can and Should be held liable for his Dexter Payne action and for the action of his Employees. For Dexter Payne, is and was Very much aware of the fact that acit 1110 of 2021 was not a law in the month of April-7-2021.

The Plaintiff's States that because Dexter Payne, upheld ADC-State officials use of Act-1110 of 2021, on 4-7-2021 and the fact that ACT-1110 of 2021 did Not Exist on 4/07/2021. Then the Plaintiff's Prays for this Court to grant the Plaintiff's the right to Sue Dexter Payne, in his official and Personal Capacity for the Sum of $30,000.00 dollars for Injuctive Relief, due to ADC unlawful use of ACT 1110 of 2021 that was Not law on 4/07/2021. And Constitutional Violations.

The Plaintiff's states that Dexter Payne, was aware of the fraud and theft of property Committed by ADC State officials; Dexter Payne, was aware that No Court gave an order to Place a lien on the Plaintiff's Trust fund banking account; Dexter Payne, knew that No Court gave any order for ADC to enforce a lien on the Plaintiff's account.

26

Dexter Payne, was aware of the Constitutional violations by State officials. Dexter Payne, was aware of ADC State officials violations of the Plaintiff's grievance Procedures. Therefore because Dexter Payne, took No action to Correct the State officials Errors of abuse to that of the Plaintiff's. The Plaintiff's therefore Prays for this Court to grant the Plaintiff's the rights to Sue Dexter Payne in his-- official and Personal Capacity for the Sum of $30,000.00 for Compensatory Damages due to all of the above facts and all other Constitutional violation and wrongdoing by ADC officials.

Wherefore the Plaintiff's James E Smith, allege and states that Dexter Payne, Refusal to Correct ADC State officials wrong doings, that Cause the Plaintiff's to suffer Emotional Distress, Invasion of Privacy, Loss of Property, a denial of Due process of Law, in violation of the 14th Amendment of the U.S. Constitution. Mental anguish and for any and all other equitable relief Such as financial burdens. Therefore I the Plaintiff's Prays for this honorable District Court to grant the Plaintiff's the Right to Sue - Dexter Payne. in his Official and Personal Capacity for the Sum - of $30,000.00 dollars based upon the Unlawful use of Act 1110 of 2021 that was Not enacted on 04/07/2021, And for the same $30,000.00 for Punitive Damage.

The Plaintiff's States that APRIL Gibson -ADC - Inmate Grievance Coordinator/Central Office, use ACT. 1110 of 2021, to try to Cover up ADC State officials Fraud and Theft of property. APRIL Gibson, was an accessory to Fraud and Theft of Property; Therefore the Plaintiff's Pray for this Court to grant the Plaintiff's the right to Sue APRIL Gibson- in her official and Personal Capacity for the Sum of $30,000.00 for InJuctive Relief and for $30.000.00 for Compensatory Damages and for $30,000.00 dollars for Punitive Damage, Due to being an accessory to Fraud and theft of property.

27

## Relief:

Wherefore the Plaintiff's James E. Smith #721300. Now Comes before this honorable Federal District Court upon the Cause of ADC State officials Misconduct to Commit Fraud and theft of Property that infringed upon the Plaintiff's rights to due Process of law of the 5th and 14th Amendments of the U.S. Constitution. And that Violated the Plaintiff's eighth Amendment Rights to be free from Cruel and unusual Punishment of the U.S. Constitution. And because of the State officials unlawful Use of Act 1110 of 2021, that was NOT law on 04/07/2021 has Cause the Plaintiff's to Ask this Court to Grant the Plaintiff's the Rights to Sue ADC and ADC State officials in their official and Personal Capacity for the Sum of $235,000.00 dollars for Inductive Relief and for $235,000.00 for Compensatory Damage. and for $235,000.00 dollars for **Punitive Damage**. Therefore the Plaintiff's Pray for any and all other equitable Relief

I declare under Penalty of Perjury (18 U.S.C § 1621) that the foregoing is true and accurate to the best of my knowledge, information and belief.

*James E. Smith*
Petitioner:

I further Swear that the Statement matter and thing Contained herein are True and accurate to the best of my knowledge, information and belief.

11-13-21
Date

*Shelia R [signature]*
Notary

SUBSCRIBED AND SWORN TO BEFORE ME A NOTARY PUBLIC on This day of November 13, 2021

My Commission Expires: 09-05-2028

SHELIA R JOHNSON
NOTARY PUBLIC-STATE OF ARKANSAS
JEFFERSON COUNTY
My Commission Expires 09-05-2028
Commission # 12708182

28

PLEASE COMPLETE THE FOLLOWING INFORMATION AND RETURN IT
TO THE UNITED STATES DISTRICT CLERK'S OFFICE.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS

The Clerk's Office has provided me with a copy of the **Notice of Electronic Availability of Case Information.** (See Federal Rules of Civil Procedure § 5.2.)

James E. Smith

_____
PRINT NAME

_____
SIGNED NAME

_____
DATE

_____
CASE NUMBER (IF KNOWN)

29

STATE OF ARKANSAS )
                 Jefferson ) SS

COUNTY OF ~~Hotspanngs~~ son )

```
SHELIA R JOHNSON
NOTARY PUBLIC-STATE OF ARKANSAS
JEFFERSON COUNTY
My Commission Expires 09-05-2028
Commission # 12706182
```

SUBSCRIBED AND SWORN TO BEFORE ME, a Notary Public, on this 13th

day of __November__ , 20 21 .

_____
NOTARY PUBLIC

My Commission Expires: 09-05-2028

## CERTIFICATE OF SERVICE

A copy of the foregoing _Civil Complaint 1983 ACT 42 U.S.C. 1983_ has been served

by the United States Mail, postage pre-paid, to:

UNITED STATES DISTRICT COURT OFFICE OF THE CLERK 30 S 6th STREET,
Room 1038 FORT Smith, Arkansas 72901-2437; Pro Se law clerk
35 EasT Mountain Street, Suite 510 FayeTTeville, AR 72701

_____

_____ on this 13 day of NOV ⊹ ,20 21 .

James E. Smith #121300
NAME and ADC#
P.O. Box 1630
Malvern, AR 72104

30

( Grievance Exhibits )

Documents:          Grievance fully Exhausted:
                    Grievance NO: OR-21-00555

Grievance Procedure #OR-21-00555 has been Completed:
See Documentation Inside: Grievance Supports State
officials Girievance Policy violation:

1. Unit LEVEL Grievance FORM (Attachment I) OR-21-00555

2. Acknowledgment OR REJECTION OF UNIT LEVEL GIRIEVANCE Attachment II-OR-21-00555

3. Warden/CENTER SUPERVISOR'S DECISION Attachment III -OR-21-00555

4. Acknowledgement of Grievance Appeal or Rejection of Appeal-Attachment V-OR-21-00555

RECEIVED

**UNIT LEVEL GRIEVANCE FORM** (Attachment I)     JUN 0 8 2021

Unit/Center **Ouachita River Unit**

OUACHITA RIVER UNIT
GRIEVANCE OFFICE

FOR OFFICE USE ONLY
GRV. # __AR 21-00555__
Date Received: __7.8.21__
GRV. Code #: __503__

Name **James E. Smith**

ADC# **121300**   Brks # **Echo**   Job Assignment **N/A**

**7-1-21** (Date) STEP ONE: Informal Resolution

**7-7-21** (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)
If the issue was not resolved during Step One, state why: **They have not Responded;**

_____, (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm: emergency grievances are not for ordinary problems that are not of serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. In an Emergency, state why: _____

_Is this Grievance concerning Medical or Mental Health Services? _____ If yes, circle one: medical or mental_
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel involved and how **you** were affected. (Please Print): **Please be advise that Act 1110 - S.B. 544 and 12-29-119- the use of Federal relief or Stimulus Funds to Pay out Standing Court obligations, Such as- Stimulus funds to pay off existing Court fines, fees, costs, or restitution before he may use the Federal relief or Stimulus funds for any other purpose. The Act 1110 - S.B. 544 and 12-29-119, did not become law and therefore is void; I am there in request for the Business office of ADC# to re-fund to me the Petitioner's James E. Smith, the Full Sum of 1,395.00 dollars that had Came from my 1,400.00 dollars Stimulus Check. I the Petitioner do not deny the fact, that I do Federal Court Fees and Such, However" due to the Petitioner being an indigent inmate at the time the Federal Fees and Legal Copies Fees was made the petitioner by law had made an agreement with the Federal Courts and ADC# through by In Forma Pauperi's- that upon any money that the Inmate receive on his book- that only 20 per cent would come out of the money for legal fees; you have violated the In forma pauperi's Law and that is Federal "law" The fact is that any money that I receive on my book you are only suppose to take only 20 per cent out of it; Your abuse of Authority has violated my 14th amendment rights to Due process of the law;**

**James E. Smith**                              **7-1-2021**

Inmate Signature                              Date

_If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee._

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**
This form was received on ____ 1/1/2021 (date), and determined to be **Step One** and/or an Emergency Grievance
___YES (Yes or No). This form was forwarded to medical or mental health? ___NO (Yes or No). If yes, name
of the person in that department receiving this form: _____   Date ____7-1-2021

PRINT STAFF NAME (PROBLEM SOLVER)   ID Number   Staff Signature   Date Received   ____7-1-2021

Describe action taken to resolve complaint, including dates: FAILURE TO FOLLOW INSTRUCTION HAS RESULTED IN A REJECTION FOR THIS APPEAL AND MARKS THE END OF THE APPEAL PROCESS

RECEIVED
AUG 17 2021
INMATE GRIEVANCES SUPERVISOR
ADMINISTRATION BUILDING

_____   _____
Staff Signature & Date Returned     Inmate Signature & Date Received

This form was received on _____ (date), pursuant to **Step Two**. Is it an Emergency? _____ (Yes or No).
Staff Who Received Step Two Grievance: _____   Date: _____
Action Taken: _____ (Forwarded to Grievance Officer/Warden/Other) Date: _____
If forwarded, provide name of person receiving this form: _____   Date: _____

**DISTRIBUTION: YELLOW & PINK** - Inmate Receipts; **BLUE** - Grievance Officer; **ORIGINAL** - Given back to Inmate after Completion of Step One and Step Two.

ADCF-15                    www.aclantadoc.org



IGTT400
3GR

Attachment II

# ACKNOWLEDGMENT OR REJECTION OF UNIT LEVEL GRIEVANCE

TO: Inmate   Smith, James E.
FROM:  Holliman, Barbara A
DATE: 07/14/2021

ADC #:   121300A
TITLE:   Adm Review Officer
GRIEVANCE #:   OR-21-00555

Please be advised, I have received your Grievance dated 07/01/2021 on 07/14/2021 .
You should receive communication regarding the Grievance by 08/11/2021

*[signature: Holliman]*

Signature of Adm Review Officer

## CHECK ONE OF THE FOLLOWING

⊙ This Grievance will be addressed by the Warden/Center Supervisor or designee.

○ This Grievance is of a medical nature and has been forwarded to the Health Services Administrator who will respond.

○ This Grievance involves a mental health issue and has been forwarded to the Mental Health Supervisor who will respond.

▢ This Grievance has been determined to be an emergency situation, as you so indicated.

○ This Grievance has been determined to not be an emergency situation because you would not be subject to a substantial risk of personal injury or other serious irreparable harm. Your Grievance will be processed as a Non-Emergency.

○ This Grievance was REJECTED because it was either non-grievable (  ), untimely, was a duplicate of  , or was frivolous or vexatious.

## INMATE'S APPEAL

If you disagree with a rejection, you may appeal this decision within five working days by filling in the information requested below and mailing it to the appropriate Chief Deputy/Deputy/Assistant Director. Keep in mind that you are appealing the decision to reject the original complaint. Address only the rejection; do not list additional issues, which were not a part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

Inmate Signature

ADC#: 121300

Date

*Federal issue*

IGTT400

Page 1 of 1

Exhibit (7)

IGTT410
3GS

Attachment III

INMATE NAME: Smith, James E.          ADC #: 121300A          GRIEVANCE #: OR-21-00555

### WARDEN/CENTER SUPERVISOR'S DECISION

In response to your grievance please be advised, that Act 1110 of 2021, was enacted by the General Assembly of the State of Arkansas on May 3, 2021; and with this Act, the use of Federal Relief or Stimulus Funds are to pay outstanding court obligations. This mean that the funds will be used to pay off existing court fines, fees, costs, or restitution before the funds can be used for any other purpose. Per this Act, If you do not have any existing court fines, fees, costs, or restitutions fees, this is retroactive to any funds received on or after October 13, 2020, from the United states Government. ADC is a Law Enforcement Agency and beyond the control of the Division of Corrections.

HAS RESUBMITTED IN
A REFLICTION FOR THIS
APPEAL AND MARKS THE END
OF THE APPEAL PROCESS

**RECEIVED**

AUG 17 2021

Signature of Warden/Supervisor or Designee          Title: _Warden_          Date: _7/30/2021_

---

**INMATE'S APPEAL**

INMATE GRIEVANCES SUPERVISOR
ADMINISTRATION BUILDING

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the appropriate Chief Deputy/Deputy/Assistant Director along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues, which are not part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE ABOVE RESPONSE?

The $1,400.00 was deposit into my inmate Trust fund account on 4-7-2021- And on 4-7-21 ADC Start taking money out of my inmate Trust fund account, before Act 1110 of 2021, was enacted by the General Assembly of the State of Arkansas. Act 1110 was Pass into effect on may 3-2021. MY Stimulus Check was Put into my Trust fund account on 4-7-2 Therefore once the money had been Put into my account it had became my money and therefor was off limit to ADC and Could not be Applied to Act 1110 of 21 The retroactive Law wa Not Pass not until may 3-2021. And eventhough it States that any funds received on o after october 13, 2020. The retroactive part of Act 1110-of 2021-does not give anyone the right to go into any ones account and take Funds or from it. If money would have bee Put into any other bank Account ADC Could Not go into those account without a Court Order Therefore without a Court order ADC was in violation of my rights to due press of Law Under the 14 amend Constitus. I therefore pray for them to refund me my money.

_James E. Smith_
_James E. Smith_
Inmate Signature

ADC#: 121300          Date: 8-10-2021

Please Notice that on the Back Side of this warden decision, I had th Officer to Sign and Date it to wher I received my Decision from the Warden!

IGTT410          Page 1 of 1

I Cpl. M. Armstrong
gave Inmate James Smith ADC# 128000
this mail at 646pm 8/9/21    Cpl. Matthew Armstrong

STATE OF ARKANSAS }
COUNTY of Hot Springs }

I _____ being first duly sworn under oath, Presents
that I wrote the above Statement that Pertains to the day that I gave Inmate
James Smith his mail on 8/9/2021; and does States that the above in-
formation is true and Correct.

Subscribed and Sword to before me on this
22nd day of September 2021

My Commission Expires:

VICKEY DENISE RAWLINS
Notary Public - Arkansas
Grant County
Commission # 12705283
My Commission Expires Sep 29, 2028

NOTARY PUBLIC

Signature of

IGTT405
3GT

Attachment V

## ACKNOWLEDGEMENT OF GRIEVANCE APPEAL
## or REJECTION OF APPEAL

TO:  Inmate  <u>Smith, James E.</u>       ADC #:  <u>121300A</u>
FROM:  <u>Reed, Marshall (Dale) D</u>    TITLE:  <u>Chief Deputy Director</u>
RE: Receipt of Grievance  <u>OR-21-00555</u>   DATE:  <u>08/17/2021</u>

Please be advised, the appeal of your grievance dated
<u>07/01/2021</u>
was received in my office on this date  <u>08/17/2021</u>

**Your grievance appeal is being returned pursuant to the Administrative Directive on Inmate Grievances due to one of the following:**

☑ The time allowed for appeal has expired

☐ The matter is non-grievable and does not involve retaliation:

☐ (a) Parole and/or Release matter

☐ (b) Transfer

☐ (c) Job Assignment unrelated to medical restriction

☐ (d) Disciplinary matter

☐ (e) Matter beyond the Department's control and/or matter of State/Federal law

☐ (f) Involves an anticipated event

☐ You did not send all the proper Attachments:

☐ (a) Unit Level Grievance Form (Attachment 1)

☐ (b) Warden's/Center Supervisor's Decision (Attachment III); or Health Services Response Attached (Attachment IV for Health Issues Only)

☐ (c) Did not give reason for disagreement in space provided for appeal

☐ (d) Did not complete Attachment III or IV with your name, ADC#, and/or date

☐ (e) Unsanitary form(s) or documents received

☐ (f) This Appeal was REJECTED because it was a duplicate of  , or was frivolous or vexatious

# { Exhibits }

## Exhibits In. Support-1983 Civil Suit Complaint

Exhibit {1}  Trust Fund Banking Account Statement for Inmate

Exhibit {2} Trust-Fund Statement-On back Side of Exhibit { 1 }

Exhibit{3} ACT-1110 of 2021-That was Enacted on May 3-2021

Exhibit{4} Response letter To Inmate From Attorney for Inmate.S

Exhibit{5} Warden/Center Supervisor's Decision-Attachment   III

Exhibit{6} Deputy/Assistant Director Decision-Attachment  VI

Exhibit{7} Warden/Center Supervisor's Decision-Attachment III

Exhibit{8} Order Granting leave To Proceed Informa Pauperis.

Exhibit{9} ADC-Administrative Directive - Exhibit (9  )

Exhibit (1)

**AR DOC**
**REPORT NO. IBSR148 - 80**

**TRUST FUND ACCOUNT STATEMENT**
**FROM:** 02/01/2021 **TO:** 07/20/2021

**PAGE:**   1  **of**   4
**PROCESSED:** 07/20/2021  11:44 AM
**REQUESTOR:** Lillie B Buckner

**BANKING LOCATION:** AR Department of Corrections
**UNIT:**                Ouachita River Correctional Unit
**FACILITY:**          Ouachita River Correctional Unit

**ACCT NAME:**  Smith, James E

**ACCT ID:** 1121300      **ADC#:** 121300      **HOUSING:**   E  29

**TYPE:**  Inmate Checking Account

**BEGINNING BALANCE:**   02/01/2021          $0.00

**POSTED TRANSACTIONS**

| DATE | TRANSACTION TYPE | DEPOSIT REMITTER | REASON | REFERENCE # | +/- | AMOUNT | BALANCE |
|------|------------------|------------------|--------|-------------|-----|--------|---------|
| 02/24/2021 | Deposit Money for Inmate | | Unit Clearing (Miscellaneous) | 21427 | + | $15.00 | $15.00 |
| | COMMENTS: HOBBY CRAFT | | | | | | |
| 02/26/2021 | Canteen Sale to Inmate | | Personal Spending | 3587598 | - | $14.90 | $0.10 |
| 03/22/2021 | Direct Deposit (via INA) | | Credit Card | 20210321221711036 1 | + | $15.00 | $15.10 |
| | COMMENTS: Deposit for INA credit card funds. Jessica Scott | | | | | | |
| 03/22/2021 | Fed Filing Fees - Remaining Balance WD | | Payoff Obligation | AA\|006\|01 | - | $3.00 | $12.10 |
| 03/22/2021 | Medical Co-pay Charge | | Payoff Obligation | AA\|004\|01 | - | $7.10 | $5.00 |
| 03/28/2021 | Canteen Sale to Inmate | | Personal Spending | 3587598 | - | $4.94 | $0.06 |
| 04/07/2021 | Deposit Money for Inmate | | Check Received | 404411422316 | + | $1,400.00 | $1,400.06 |
| | COMMENTS: US TREASURY ECONOMIC IMPACT PAYMENT | | | | | | |
| 04/07/2021 | Fed Filing Fees - Remaining Balance WD | | Payoff Obligation | AA\|006\|01 | - | $122.00 | $1,278.06 |

Exhibit 12

| AR DOC | TRUST FUND ACCOUNT STATEMENT | PAGE: 2 of 4 |
|---|---|---|
| REPORT NO. IBSR148 - 80 | FROM: 02/01/2021 TO: 07/20/2021 | PROCESSED: 07/20/2021 11:44 AM |
| | | REQUESTOR: Lillie B Buckner |

**BANKING LOCATION:** AR Department of Corrections
**UNIT:** Ouachita River Correctional Unit
**FACILITY:** Ouachita River Correctional Unit

**ACCT NAME:** Smith, James E            **ACCT ID:** 1121300      **ADC# :** 121300      **HOUSING:** E  29

**TYPE:** Inmate Checking Account

**POSTED TRANSACTIONS**

| DATE | TRANSACTION TYPE | DEPOSIT REMITTER | REASON | REFERENCE # | +/- | AMOUNT | BALANCE |
|---|---|---|---|---|---|---|---|
| 04/07/2021 | Fed Filing Fees - Remaining Balance WD | | Payoff Obligation | AA|007|01 | - | $150.00 | $1,128.06 |
| 04/07/2021 | Fed Filing Fees - Remaining Balance WD | | Payoff Obligation | AA|008|01 | - | $8.00 | $1,120.06 |
| 04/07/2021 | Medical Co-pay Charge | | Payoff Obligation | AA|004|01 | - | $99.89 | $1,020.17 |
| 04/07/2021 | Postage Charge | | Payoff Obligation | AA|003|01 | - | $799.61 | $220.56 |
| 04/07/2021 | Legal Copier Fees WD | | Payoff Obligation | AA|002|01 | - | $215.56 | $5.00 |
| 04/09/2021 | Canteen Sale to Inmate | | Personal Spending | 3587598 | - | $4.97 | $0.03 |
| 05/09/2021 | Indigent Canteen Sale | | Personal Spending | 3587598 | - | $0.03 | $0.00 |
| | **COMMENTS:** Draw down inmate balance for Indigent Sale | | | | | | |
| 05/25/2021 | Deposit Money for Inmate | | Unit Clearing (Miscellaneous) | 21681 | + | $5.00 | $5.00 |
| | **COMMENTS:** hobbycraft | | | | | | |

EXHIBIT 3

Please be advised, that Act 1110 of 2021, was enacted by the General Assembly of the State of Arkansas on May 3, 2021; and with this Act, the use of Federal Relief or Stimulus Funds are to pay outstanding court obligations. This means that the funds will be used to pay off existing court fines, fees, costs, or restitution before the funds can be used for any other purpose. Per this Act, If you do not have any existing court fines, fees, costs, or restitution fees, the funds will be distributed in equal parts to the Inmate Welfare Fund and the Inmate Care and Custody Fund. This is retroactive to any funds received on or after October 13, 2020, from the United States Government. ADC is a Law Enforcement Agency and will therefore follow the steps in the Act as set forth. The merits of your appeal will not be addressed. This matter is beyond the control of the Division of Corrections.

April Gibson ✓
Arkansas Department of Corrections
Inmate Grievance Coordinator/Central Office
6814 Princeton Pike
Pine Bluff, Arkansas 71602
Telephone: 870-267-6317
Fax: or 870-267-6396
April.Gibson@arkansas.gov

Confidentiality Notice: This e-mail message and any attachments is the property of the State of Arkansas and may be protected by state and federal laws governing disclosure of private information.  It is for the intended recipient only. If an addressing or transmission error has misdirected this e-mail, please notify the author by replying to it. If you are not the intended recipient you may not use, disclose, distribute, copy, print or rely on this e-mail.

Exhibit (4)



**BOARD OF
CORRECTIONS**

# ARKANSAS BOARD OF CORRECTIONS
## COMPLIANCE DIVISION
### Post Office Box 20550
### White Hall, Arkansas 71612
#### Phone:  (870) 267-6752
#### Fax:     (870) 267-6755

August 13, 2021

James Smith
ADC #121300
Ouachita River Correctional Unit

RE:     Request for Legal Assistance

Dear Inmate Smith,

I am in receipt of your request for legal assistance received by the Compliance Division on August 3, 2021. I think you seem to be confusing the difference between filing fees and court ordered fines. The money that was taken out of our account was to pay court ordered fines, which has nothing to do with filing fees and your In Forma Pauperis status.

Act 1110 of 2021, otherwise known as Senate Bill 544, which was passed in the 2021 Arkansas State Legislative Session, provides that the ADC is required to deposit all endorsed stimulus checks sent in to the inmates/offenders from the IRS. If the inmate/offender owes court costs, fees, fines, and/or restitution, the money owed will be forwarded to the clerk of the court in the county for which the money is owed, and is to be applied to the amounts owed. If the inmate/offender does not owe any court costs, fees, fines, and/or restitution, the money will be divided between the inmate welfare fund and the inmate care and custody fund.

As it relates to grievances, our office does not get involved in the grievance process. You will need to follow the instructions set forth in your Inmate Handbook. That is all the advice and assistance I can provide.

I am sorry I cannot of additional assistance.

Sincerely,

M. Grisham
Attorney for Inmates

Exhibit 5

IGTT410
3GS

Attachment III

INMATE NAME: <u>Smith, James E.</u>      ADC #: <u>121300A</u>      GRIEVANCE #: <u>OR-21-00591</u>

## WARDEN/CENTER SUPERVISOR'S DECISION

Per your grievance OR-21-00591, ADC does not authorize Liens but enforces a Lien placed on your account per court documents. Lien was sent to Inmate Banking and placed on your account. Therefore, I find your grievance without merit.

Signature of Warden/Supervisor or Designee        <u>Warden</u>        <u>9/13/2021</u>
                                                    Title                      Date

## INMATE'S APPEAL

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the appropriate Chief Deputy/Deputy/Assistant Director along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues, which are not part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE ABOVE RESPONSE?

ADC#: <u>121300</u>        _____
                                   Date

Inmate Signature

**RECEIVED**

SEP 1 3 2021

OUACHITA RIVER UNIT
WARDENS OFFICE

IGTT410                    Page 1 of 1

Exhibit 6

IGTT430
3GD

Attachment VI

INMATE NAME: Greene, Michael W.        ADC #: 124053        GRIEVANCE#:OR-21-00454

## CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION

In your grievance dated 6/5/21, you stated, "On 5/27/21 a memo bearing bearing the signature "Kelly Moring" was posted in my barracks. It states that as of 5/1/21 federal checks sent to an inmate will go into a "holding" account belonging to ADC pursuant to 2021 Arkansas Act 1110. This is discrimination. I just signed a $1400 on 5/10/21. It is not my fault that the IRS did not process my payment sooner. Many inmates have been allowed to spend their money stimulating the economy as was the full purpose and objective of the US Congress. Keeping my money will violate my equal protection right afforded to me by the 14th Amendment of the US Constitution. Jeffery Jerry ADC Chief Financial officer Needs to reconsider this action. For corrective action, I need my $1400 tax credit payment deposited to my inmate account."

On 6/21/21 the Warden responded, "Ms. Moring in the Unit Business Office stated that she did receive your signed check and it was forwarded to inmate banking in Pine Bluff for processing; however, pursuant to Act 1110 of 2021, Mrs. Cryer, Chief Legal Advisor for ADC, stated that inmate banking is unable to deposit the funds into your account at this time. I find this grievance without merit."

Your appeal was received on 7/7/21. Be advised that ACT 1110 of 2021 states, "a person who is in the custody of the Department of Corrections for an offense committed in the state who receives any federal relief or stimulus funds from the United States Government is required to first use the federal relief or stimulus funds to pay off existing court fines, fees, costs, or restitution before he or she may use the federal relief or stimulus funds for any other purpose." The Division of Corrections has to abide by the guidelines of ACT 1110 of 2021, which makes this issue beyond the control of the Department. Therefore, I will not address the merit of this appeal.

_____
Director

8-5-21
_____
Date

Exhibit 9

IGTT410
3GS

Attachment III

INMATE NAME: Smith, James E.          ADC #: 121300A          GRIEVANCE #: OR-21-00555

### WARDEN/CENTER SUPERVISOR'S DECISION

In response to your grievance please be advised, that Act 1110 of 2021, was enacted by the General Assembly of the State of Arkansas on May 3, 2021; and with this Act, the use of Federal Relief or Stimulus Funds are to pay outstanding court obligations. This mean that the funds will be used to pay off existing court fines, fees, costs, or restitution before the funds can be used for any other purpose. Per this Act, If you do not have any existing court fines, fees, costs, or restitutions fees, this is retroactive to any funds received on or after October 13, 2020, from the United states' Government. ADC is a Law Enforcement Agency and beyond the control of the Division of Corrections.

**RECEIVED**

AUG 1 7 2021

Signature of Warden/Supervisor or Designee

INMATE GRIEVANCES SUPERVISOR
ADMINISTRATION BUILDING

_Warden_          7/30/2021
Title                    Date

*(handwritten, partially legible stamp overlay):* ... RESULTED IN A REJECTION TO THIS APPEAL AND MARKS THE END OF THE ... APPEAL PROCESS ...

---

**INMATE'S APPEAL**

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the appropriate Chief Deputy/Deputy/Assistant Director along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues, which are not part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE ABOVE RESPONSE?

The $1,400.00 Was deposit into my inmate trust fund account on 4-7-2021- And on 4-7-2 ADC Start taking money out of my Inmate Trust fund account; before Act 1110 of 2021 was enacted by the General Assembly of the State of Arkansas. Act 1110 was pass in effect on May 3-2021. My Stimulus Check was Put into my Trust fund account on 4-? Therefore once the money had been Put into my account it had became my money And there was off limit to ADC and Could not be Applied to Act1110 of 21. The retroactive Law Not pass not until May 3-2021. And even though it States that any funds received on after October 13, 2020. The retroactive part of Act 1110- of 2021-does not give anyone t right to go into any ones account and take Funds from it. If money would have be Put into any other bank account ADC Could Not go into those account without a Court Ord Therefore without a Court Order ADC was in violation of my rights to due press of Law under the 14 ame. Const. 9.US.          I therefore pray for them to refund me my money.

_James E. Smith_
_James E. Smith_
Inmate Signature

ADC#: 121300          8-10-2021
Date

*(handwritten note bottom right):* Please Notice that on the Back Side of this Warden decision, I had Officer to Sign and date it to wh I received my Decision from the Warden!

(Sample
For Evidence)

Exhibit 8

**IN THE CIRCUIT COURT OF _____ COUNTY, ARKANSAS**

_____ **DIVISION**

                                                   **PLAINTIFF**

_____

VS.                          **CASE NO.** _____

_____                          **DEFENDANT**

## ORDER GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS

On this day comes to be heard the petition of _____ prays that he/she be permitted to prosecute his/her action in the above case *in forma pauperis*. The Court being satisfied of the truth of the facts alleged and good cause appearing therefore, IT IS HEREBY ORDERED:

1.    That _____ be authorized and permitted to prosecute this action *in forma pauperis*.

2.    That the Clerk of the Circuit Court of _____ County shall receive and file any necessary forms or pleadings incident to Plaintiff's action without requiring the payment of fees or costs.

3.    That the sheriffs of the several counties of the State of Arkansas shall service writs or processes incident to Plaintiff's action without requiring the payment of fees or costs.

4.    That no other office shall require of the Plaintiff any fees or costs incident to Plaintiff's action.

_____
JUDGE

_____
DATE





**Arkansas Department of Correction**

honor and integrity in public service

PO Box 8707
Pine Bluff, AR 71611-8707
Phone: 870-267-6200
Fax:    870-267-6244
www.adc.arkansas.gov

# ADMINISTRATIVE DIRECTIVE

**SUBJECT:   Inmate Liens**

**NUMBER:   16-44**                                    **SUPERSEDES:  11-46**

**APPLICABILITY:  All ADC Employees and Inmates**

**REFERENCE:  AR 109 – Funds of Offenders**          **PAGE: 1 of 2**

**APPROVED:  Original Signed by Wendy Kelley**       **EFFECTIVE DATE: 9/23/2016**

I.   **POLICY**:

It shall be the policy of the Arkansas Department of Correction (ADC) to provide a Lien Process for collection of monies owed by an inmate for purposes as defined in the following procedures.

II.   **PROCEDURES**:

A.   Liens will be charged to an inmate's account for the charges listed below, and the collection of funds from future receipts to satisfy open liens will be applied in the below listed order.

1.   Court Ordered Child Support – Collection of child support shall be as directed by the court.

2.   Work Release Upkeep Rent – Collection of lien shall not reduce the account balance below $25.00.

3.   Restitution – Collection of lien shall not reduce the account balance below $5.00.

4.   ID Card Replacement, State of Arkansas Drivers License or Identification Card – Account balance of any amount shall be collected to satisfy lien.

5.   State Filing Fees – Collection of lien shall not reduce the account balance below $10.00.

6.   Work Release Uniforms – Collection of lien shall not reduce the account balance below $25.00.

7.   Federal Filing Fees Initial Partial – Collection of lien shall be collected as directed by the court.

8.   Federal Filing Fees Remaining Balance – Collection of lien will not reduce the account balance below $10.00.

9.   Medical Co-Pay – Collection of lien will not reduce the account balance below $5.00.

10.   Cost of Privileged Correspondence – Collection of lien will not reduce the account balance below $5.00.

11. *ADC* Cost of Copier Usage for Legal Purposes – Collection of lien will not reduce the account balance below $5.00.

12. *ADC* Cost of Postage & Proof of Delivery for Property Returns – Collection of lien will not reduce the account balance below $5.00.

B.   "Holiday Funds" credited to eligible inmates during the month of December, as approved by the Board of Corrections, shall not be collected to satisfy any outstanding lien.

C.   "Holiday Prize Money" credited to an inmate's account from the Inmate Welfare Fund shall not be collected to satisfy any outstanding lien.

D.   "Holiday Prize Money" credited to an inmate's account from Inmate Council Funds shall be collected to satisfy any outstanding lien, subject to the above limitations.

*accordingly to State Law an indigent inmate is not obligated to pay state cost of postage fees and is not obligated to pay for state legal copies pass fees; See Exhibit (8)*



**DIVISION OF
CORRECTION**

6814 Princeton Pike
Pine Bluff, AR 71611
Phone: 870-267-6999 • Fax: 870-267-6244
www.adc.arkansas.gov

# ADMINISTRATIVE DIRECTIVE

**SUBJECT:  Inmate Grievance Procedure**

**NUMBER: 19-34**                                      **SUPERSEDES: 19-20**

**APPLICABILITY:  All employees and inmates**      **PAGE 1 of 31**

**REFERENCE:  AR 835 – Grievance Procedure for Offenders**

**APPROVED:    Original signed by Dexter Payne**      **EFFECTIVE DATE: 12/2/2019**

## I.    POLICY:

It is the policy of the Arkansas Division of Correction to provide inmates in its custody
an administrative process for the resolution of complaints, problems and other issues.

## II.    EXPLANATION:

The grievance procedure is an administrative process for the submission and resolution of
inmate problems and complaints. The process is designed to solve the problem at the
lowest level, as promptly as feasible, and in a manner that is fair, reasonable, and
consistent with the Division of Correction's mission.

The administrative process for the resolution of complaints and identification of problem
areas is intended to supplement but not replace daily and routine communication between
staff and inmates.

## III.    DEFINITIONS:

A.    Informal Resolution – the first step consisting of a written complaint (Unit Level
        Grievance Form, Attachment I) by an inmate that is intended to allow staff the

opportunity to resolve an issue on an informal basis, and to serve as a prerequisite to the second step, a formal grievance.

B.  Grievance – the second (formal) step where a written complaint using the same form used for the Informal Resolution (Unit Level Grievance Form, Attachment I) is submitted by an inmate on the inmate's own behalf (an inmate cannot grieve on behalf of another inmate) regarding:

    1.  A policy applicable within his or her unit/center of assignment that personally affects the inmate;

    2.  A condition in the facility that personally affects the inmate;

    3.  An action of another inmate, or inmates, that personally affects the inmate;

    4.  An action of an employee(s), contractor(s), or volunteer(s) that personally affects the inmate; or

    5.  An incident occurring within his or her facility that personally affects the inmate.

C.  Warden – the Warden or Center Supervisor of the facility or designee.

D.  Appeal – a written request directed to a Chief Deputy/Deputy/Assistant Director for further action to resolve the issue or complaint in the grievance based upon the inmate's assertion that the issue has not been resolved at the Unit level.  (The appeal cannot raise new or additional issues or complaints.)

E.  Working Days – Monday through Friday, excluding state observed holidays.

F.  Emergency – a problem that, if not immediately addressed, subjects the inmate to a substantial risk of personal injury or other serious and irreparable harm such as, physical abuse. If a grievance, submitted as an emergency grievance by the inmate, is deemed an emergency by the problem solver, the grievance is immediately submitted to the Warden/highest ranking supervisor at the unit without the completion of Step One, the informal process; however, if the grievance is not an Emergency, it will be processed under Step One.

G.  PREA Grievance – Grievance where inmate is alleging staff-on-inmate or inmate-on-inmate sexual abuse or sexual harassment as those terms are defined in the PREA Administrative Directive. A Problem Solver should immediately submit a suspected PREA grievance to the highest ranking supervisor at the unit, who will then contact the duty warden, without the completion of Step One, the informal process; however, if the duty warden finds that the grievance is not a PREA grievance, it will be returned to the Problem Solver and processed under Step One.

H.     Non-Grievable Issues – the following matters are not grievable:

1.     Parole;
2.     Release;
3.     Transfer;
4.     Job Assignments unless in conflict with medical restrictions;
5.     Disciplinaries;
6.     Anticipated events (i.e. events or activities which may or may not occur in the future);
7.     Matters beyond the control of the Division of Correction, including issues controlled by State or Federal law or regulation;
8.     Rejection of a Publication
9.     A grievance submitted by an inmate on behalf of another inmate.

Note:  Claims of Retaliation, even if related to an issue referenced above, are Grievable.

I.     Available Remedies – if the facts asserted by the inmate would, if true, fall within the definition of Grievance, the matter shall be investigated, unless previously investigated. If the grievance is found to be with merit, the Division official designated to respond to the grievance shall have the authority, within the exercise of his or her discretion and consistent with the Division policies and the safety, security and good order of the facility, to offer actions by the Division designed to resolve the inmate's grievance. However, such available remedies do not include disciplinary action against an employee, contractor, or volunteer, nor monetary damages.

J.     Problem Solver – staff designated at each facility to serve as a contact for resolution of a problem or complaint, and specifically, to resolve Step One issues raised in this process.  A list of these individuals will be posted in each housing unit.  If the Problem Solver(s) is not available, any staff member of the rank of sergeant or above can collect Step One grievances (also referred to as "informal") and shall then act as the Problem Solver for that Step One grievance.

K.     Medical Department – Health Services Administrator (HSA) or designee.

L.     Mental Health Supervisor – the Division of Correction employee supervising the mental health staff and programs at the unit level.

IV.  **PROCEDURES:**

The inmate grievance procedure is an internal administrative process for the resolution of complaints and the identification of potentially problematic management areas; however, it does not replace daily and routine communication between inmates and staff. Prior to filing a formal grievance (Step Two), an

inmate must first seek a resolution of the complaint informally by taking Step One under this policy.

One form (Attachment I) will be used for both Step One (informal resolution) and Step Two (formal grievance). This same form will be used to submit all inmate grievance issues, including emergencies.

A. Proposed Changes to the Procedure

When the Division proposes to adopt changes to any policy which affects the inmate grievance process, the proposed changes shall be posted in prominent locations **(to include employee and inmate bulletin boards and including electronic distribution) throughout the institution at least 30 days prior to the adoption of the changes.** All comments shall be considered prior to adoption of the change and shall be kept as part of the appropriate policy file documentation. **Inmates in Restrictive Housing will be provided a copy of the proposed change by the Grievance Officer at least 30 days prior to the adoption of the change.**

B. Communication of Procedure

1. Written notification of the Inmate Grievance Procedure, and any changes there to, will be distributed to both inmates and employees. In addition, arriving inmates and new employees will have an opportunity to ask questions about the procedure and have them answered verbally.

2. If an inmate has a disability affecting communication or is not fluent in the English language, interpretive or explanatory services will be made available.

3. All employees at the facility level shall receive training by designated staff in the skills necessary to assist or participate in the inmate grievance procedure.

4. A summary of the Inmate Grievance Procedure will be included in the Inmate Handbook. However, the Inmate Grievance procedure is governed by this Administrative Directive and not any summary in the Inmate Handbook. All inmates shall be provided access to this Administrative Directive.

C. Accessibility

Each inmate shall be entitled to utilize the Inmate Grievance Procedure regardless of his or her security status, custody level, job classification, disciplinary status, or any administrative/ judicial decisions affecting the inmate.

1. Copies of this policy shall be available for examination in each Unit's Law Library.

2. The Attachment I grievance form shall be readily available to any inmate in any housing area at any time; however, no more than five (5) forms per week, except in the case of an emergency as defined in this policy, may be requested by an individual inmate. Additionally, an inmate may not have more than ten (10) blank Attachment I grievance forms in his or her possession at any one time, and no more than twenty (20) unsubmitted (not signed by a Problem Solver) Attachment I grievance forms in his or her possession at any one time.

3. An inmate may request one copy of his or her grievance from the facility grievance staff upon presenting a completed Section 1983 lawsuit or Claims Commission claim. The inmate must provide the grievance number for the particular grievance he/she is requesting.

4. A Grievance must specifically name each individual involved in order that a proper investigation and response may be completed. An inmate must fully exhaust the grievance procedure as a prerequisite to pursuing any legal action related to the subject matter of the grievance. All inmates are hereby advised that the Division reserves the right to raise any and all defenses, including the failure to exhaust the grievance procedure, as to any claim which may have been subject to the grievance procedure and as to any person or entity.

   An inmate who fails to name all parties during the grievance process may have his or her lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties.

D. Completion of Forms

1. Inmates who have difficulty understanding how to complete the grievance forms or difficulty actually completing the forms should request and will be provided with assistance from staff. However, there is no prohibition against an inmate seeking assistance from another inmate if the grievant has language barriers or cannot read or write.

2. Only one Unit Level Grievance Form (Attachment I) can be submitted per grievance and only one problem/issue should be stated in the grievance, not multiple problems/issues. An inmate must use a separate form for each issue. Only one issue will be addressed in the response to a grievance. Additional problems/issues contained in the grievance will not be addressed and will not be considered as exhausted. Inmates are reminded that exhaustion of an issue is a perquisite to filing a lawsuit related to that issue in accordance with the Prison Litigation Reform Act of 1995.

3. If the inmate is legally using a name other than the name under which he or she was committed to the Arkansas Division of Correction, both the legal and commitment names shall be used when completing the forms.

4. All forms, except those submitted electronically where and when electronic submission is available, must be legible and in ink, if available. Tape and other adhesive substances should not be used on any grievance forms.

5. If any Grievance Form is received in an unsanitary condition, that form(s) may be photographed and logged and held for evidence for appropriate disciplinary action against the inmate. Unsanitary grievance forms will not be accepted. The Problem Solver will return the grievance form to the inmate and then complete an Incident Report (Form 005).

E. Step One: Informal Resolution Procedure

Inmates are required to seek an informal resolution of a problem/complaint prior to filing a grievance.

1. The Unit Level Grievance Form (Attachment I) shall be completed and submitted within 15 days after the occurrence of the incident, with the date indicated beside "Step 1: Informal Resolution". PREA grievances are not subject to the 15 day time limit.

2. On the Unit Level Grievance Form (Attachment I), and only in the space provided, the inmate should write a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form. Illegible or unintelligible grievances will not be accepted, but rather will be returned to the inmate by the Problem Solver with an explanation stating why the grievance will not be accepted. The Problem Solver will then complete an Incident report (Form 005).

Additional sheets, including additional pages of the grievance written on Unit Level Grievance Forms (Attachment I) should not be attached and will be returned to the inmate upon submission or as soon as practical. ONLY THE STATEMENT IN THE SPACE PROVIDED ON THE ATTACHMENT I FORM WILL BE MAINTAINED AND CONSIDERED THE GRIEVANCE SUBMISSION. However, additional sheets attached to PREA grievances will be maintained with the grievance.

3. The Unit Level Grievance Form (Attachment I) should be presented to one of the individuals whose name is posted in the housing unit as a designated Problem Solver. If a Problem Solver is not available, any staff

member holding the rank of sergeant or above can collect a Step One grievance and shall then act as the Problem- Solver for that Step One grievance. If it is a PREA grievance, any staff member may act as the problem solver. At this time, the Problem Solver or staff member must sign and date the form, giving the inmate back the yellow and pink copies as receipts.

4. After receipt of the Unit Level Grievance Form (Attachment I), the Problem Solver will:

   a. meet with the inmate within three working days to resolve the issue; or

   b. meet with the inmate immediately to resolve the issue if it is an emergency; or

   c. refer medical issues to the HSA (examples include, but are not limited to, missed medications, inability to access medical services, failure to be seen at Sick Call or clinic appointments, or failure to receive lab or test results) as soon as practical, but in any event within one working day; or

   d. refer mental health issues to the Mental Health Supervisor as soon as practical, but in any event within one working day; or

   e. If the grievance is a PREA grievance, immediately notify the highest ranking officer at the unit or Duty Warden who will immediately cause the initiation of an investigation.

5. If the inmate believes the matter to be an Emergency, as defined in this Administrative Directive, he/she will fill in the date beside "Emergency Grievance" on the Unit Level Grievance Form to designate the grievance as an Emergency, and present the form to any staff member, but preferably a designated Problem Solver. If that staff recipient determines that an Emergency does exist, corrective action shall be taken as soon as possible and within no more than twenty-four (24) hours. If the staff recipient determines that no Emergency exists, the informal resolution form shall be processed within the normal time limits stated within this policy.

6. Upon receipt of a Unit Level Grievance Form submitted under Step One, the HSA, or medical department representative appointed by the HSA, or the Mental Health Supervisor will take whatever action is deemed clinically appropriate to fully resolve the problem, document the action taken, or state why no action is necessary or appropriate. The HSA or Mental Health Supervisor or designee will sign the form in the space provided for the staff signature which is found on the same line as the inmate signature following the description of the action taken to resolve the complaint. Please note the staff signature should NOT be in the space provided for the signature of the designated Problem Solver.

7.  As soon as practical, the HSA, Mental Health Supervisor, or designee will return the Unit Level Grievance Form to the inmate and provide a copy to the Grievance Officer. NOTE: In no event should this period exceed three (3) working days from submission of the Unit Level Grievance Form for Step One by the inmate to the Problem Solver. The HSA, Mental Health Supervisor, or designee should not respond to a grievance that is alleging misconduct by that individual against the inmate; however, where the inmate still has another step in the grievance process to challenge the conduct or the inmate is alleging indirect misconduct (failure to act) as opposed to direct misconduct, such as physical abuse or retaliation, by the HSA or the Mental Health Supervisor, then the Regional Manager or Mental Health Administrator will respond after the medical or mental health department has appropriately logged the resolution.

8.  The HSA or Mental Health Supervisor will retain a copy for his or her records and for quality improvement purposes.

9.  If the problem (those not referred to medical or mental health departments) can be resolved at the informal level, the Problem Solver should document the action taken on the Unit Level Grievance Form (Attachment I) and then both the inmate and the Problem Solver must sign and date the form.

10. If the problem cannot be resolved at Step One, the informal level, the Problem Solver must still document the resolution attempt on Attachment I, and then the inmate and the Problem Solver must sign and date the form. At this time, if the inmate chooses, he/she may now proceed to Step Two (the formal grievance) using this same form (Attachment I).  See procedures for Step Two below.

11. If the designated Problem Solver (or substituted person to resolve the issue such as a medical or mental health staff member) has failed to contact the inmate and attempt resolution of the complaint or failed to return Step One (the grievance) within the designated three working days, the inmate may proceed to Step Two, the formal grievance, without the completion of Step One.  In that instance, Step Two, the formal grievance, must be filed no later than six (6) working days from the original submission of the Unit Level Grievance Form pursuant to Step One: this allows three (3) working days to wait for a response to Step One, and three (3) working days to initiate Step Two. (These are not three (3) additional days, i.e., if the Problem Solver returns Step One on the day it was submitted, the inmate has only three (3) working days from receipt of that response to file Step Two.) The inmate will submit a copy of his/her Unit Level Grievance Form using the pink or yellow copy, whichever is most legible, that he/she retained following the instructions for Step Two.

12. Whether or not the problem is resolved, the inmate should retain either the pink or yellow copy, whichever he did not submit for Step Two. A copy may be retained by the designated Problem Solver, and a copy is forwarded to the Grievance Officer for entry into the offender tracking system if necessary.

13. If an inmate has been transferred from the Unit where the incident or issue arose within the fifteen (15) days allowed to file Step One and the inmate submits Step One at a different Unit, and if the Problem Solver, HSA, or Mental Health Supervisor cannot address the issue because of the transfer, then the response to Step One should be "proceed to Step Two." Upon submission of Step Two, the Grievance Officer will complete the portion of the Unit Level Grievance Form indicating the date received and to whom it was sent and immediately forward the grievance to the Grievance Officer at the unit where the incident or issue arose to process with a grievance number from that Unit. The deadlines will remain the same under this procedure to submit the grievance steps, and to respond with the date of submission to the first Grievance Officer beginning the response time.

F. Step Two: the Formal Grievance Procedure

After attempting to resolve the issue through Step One, informal resolution, an inmate can proceed to Step Two by filing a formal grievance on the same Unit Level Grievance Form (Attachment I) that was used for Step One.

1. The inmate should complete the date beside "Step Two: Formal Grievance" and the section regarding resubmission (of this form) including an explanation why the inmate considers the informal resolution unsuccessful, and deposit it into the designated grievance box, or submit it to a Staff Member if the inmate's assignment prevents access to the grievance box. The Grievance Officer shall collect grievance forms daily, excluding weekends and holidays.

2. Additional sheets cannot be attached to the Unit Level Grievance Form (unless it is a PREA grievance) and only information in the space provided will be considered part of the grievance submission. Any new issues added to the form will not be considered.

3. Upon receipt, the Grievance Officer shall complete the box "for office use only" on the Unit Level Grievance form by assigning a number to the grievance (using unit and subject codes as described in the Grievance Procedure Codes-Attachment VII), and logging the date the grievance was received, inmate's name, ADC number, type of grievance, and the text of the inmate's complaint contained within the appropriate space on Attachment I in eOMIS.

      a.    All medical issues will be coded 600 by the Unit Grievance Officer. All mental health issues will be coded 630.

      b.    The Medical and Mental Health Departments will assign more specific type codes as indicated on Attachment VII into eOMIS when completing the response to the grievance.

4.    The Grievance Officer shall then transmit an Acknowledgement or Rejection of the Unit Level Grievance Form (see Attachment II) to the inmate within five (5) working days after receipt. No acknowledgment is required if a written response to the grievance, signed by the Warden, Health Services Administrator, or Mental Health Supervisor or designees, can be provided within five (5) working days.

5.    The Grievance Officer will note whether the grievance is medical or mental health related. Such Step Two medical or mental health grievances will be forwarded as soon as possible, and in no event later than five (5) days, to the appropriate medical or mental health department for investigation and response to the inmate.

      a.    If the grievance is medical in nature, it is forwarded to the Health Services Administrator (HSA) at the Unit Medical Department for a response. The HSA, or designee, should not respond to a grievance that is alleging misconduct by that individual unless the inmate still has another step in the grievance process to challenge the conduct, or the inmate is alleging indirect misconduct (failure to act). Where the inmate is alleging direct misconduct (such as physical abuse or retaliation) by the HSA, then the appropriate Regional Manager will respond after the medical department has appropriately logged the resolution.

      b.    If the grievance relates to mental health services, the supervisor of mental health services for the facility, or designee, will answer the grievance. The Mental Health Supervisor, or designee, should not respond to a grievance that is alleging misconduct by that individual unless the inmate still has another step in the grievance process to challenge the conduct, or the inmate is alleging indirect misconduct (failure to act). Where the inmate is alleging direct misconduct (physical abuse or retaliation) by the Mental Health Supervisor, then the Mental Health Administrator at Central Office will respond after the mental health department has appropriately logged the resolution.

6.    The Inmate Grievance Worksheet (see Attachment VIII) may be used by staff when investigating grievances.

7.  Every inmate grievant shall receive a written or electronic response to his or her grievance within 20 working days of receipt (or more promptly in the case of an Emergency grievance). The response will be on the form entitled Warden/Center Supervisor Decision (Attachment III) and signed by the Warden or the Warden's designee. In the case of a medical or mental health grievance, the response will be on the form entitled Health Services Response to Unit Level Grievance (see Attachment IV) from the medical or mental health department.

    The Unit Level Grievance Response/Decision shall include:

    a.  the reason for the decision, in clear, well reasoned terms; and

    b.  a statement that the Grievance:
        has merit and requires further action for resolution; or
        has merit, but is being resolved; or
        had merit but has been resolved; or
        has no merit.

8.  The Grievance Officer will meet with the Warden for the appropriate response to the grievance. If the Warden refers a PREA investigation to IAD, the grievance response is sent after the Warden receives the Director's disposition of suspected PREA allegation.

9.  If an inmate has not received a response to his/her Unit Level Grievance within the allotted time frame as stated on the Acknowledgement Form or the Extension Form, if applicable, the inmate may move to the next level of the process, an appeal to the Chief Deputy/Deputy/Assistant Director Level. In this instance, the appeal must be filed no later than five (5) working days.

    The Grievance Extension Form will be used in cases where a longer period is required for a response to or resolution of the problem. The inmate shall be notified by the responding authority, in writing, of the reason for the delay and its expected length on the Grievance Extension Form (see Attachment X). Time limits for responding will be extended automatically upon the completion of the Grievance Extension Form (Attachment X), unless the inmate disagrees in writing to the extension. If the inmate does not agree to the extension, the inmate understands and agrees that, with that decision, no further action will be taken on the issue, and the grievance will be returned to the inmate without a decision on its merit. By disagreeing with the extension, the inmate waives his or her right to have the grievance issue considered. If a second or additional extension is needed, the extension will be granted only upon approval of the Warden or Deputy Warden at the Step Two level.

G. Steps to Appeal the Unit Level Grievance Decision:

After receiving a response from the Warden, the Health Services Administrator (HSA), the Mental Health Supervisor, or applicable designee, if the inmate is not satisfied, he or she may appeal to the appropriate Chief Deputy/Deputy/Assistant Director who will attempt to resolve the matter or assign an appropriate staff member to do so. In this instance, the appeal must be filed within the five (5) working days from the date of the response.

1. The appeal must be written in the space provided above the signature line on the original Warden/Center Supervisor's Decision Form (Attachment III), the Health Services Response to Unit Level Grievance Form (Attachment IV) for medical or mental health grievances entitled Inmate's Appeal (see Attachment III and IV), or the Acknowledgement or Rejection of Unit Level Grievance (Attachment II). Only what is written in the space provided above the signature line for appeal will be considered part of the grievance appeal. Except for a PREA grievance, additional sheets should not be attached and will be returned to the inmate upon receipt of the appeal or as soon as practical. ONLY THE STATEMENT IN THE SPACE PROVIDED ABOVE THE SIGNATURE LINE WILL BE MAINTAINED AND CONSIDERED PART OF THE APPEAL SUBMISSION.

2. To appeal the inmate must include the original (no photocopies) Unit Level Grievance Form (Attachment I), which describes the matter originally grieved, and either the Warden/Center Supervisor Decision Form (Attachment III), the Health Services Response to Unit Level Grievance (Attachment IV), or the Acknowledgement or Rejection of Unit Level Grievance (Attachment II) if the inmate is asserting the grievance was improperly rejected or if the inmate did not receive a response or extension within the applicable timeframe. The inmate should deposit the appeal into the designated grievance box; or submit it to a Staff Member if the inmate's assignment prevents access to the grievance box. If these two (2) pages are not submitted with the inmate's appeal portion completed, the appeal may be returned to the inmate as rejected.

   To complete the appeal, the inmate must state a reason for the appeal, and must date, sign, and write the inmate's ADC number on the attachment being appealed.

   Do not list additional issues, requests, or names which were not a part of the original grievance, as those will not be addressed.

3. The Chief Deputy/Deputy/Assistant Director may process a grievance appeal not meeting the criteria set forth above when necessary for the

safety and security of the Department

4. Appeals relating to medical, mental health or treatment program issues are submitted to the Deputy Director for Health and Correctional Programs.

All other grievances will be forwarded to the appropriate Chief Deputy/Deputy/Assistant Director for Institutions.

All Appeals will be answered by the Chief Deputy/Deputy/Assistant Director regardless of whether those individuals are named in the grievance.

5. Receipt of the appeal shall be acknowledged or rejected within five (5) working days unless a response can be provided within five (5) working days to the grievance signed by the Chief Deputy/Deputy/Assistant Director. The response shall be in written or electronic format.

6. The Chief Deputy/Deputy/Assistant Director will respond to the inmate concerning the decision within thirty (30) working days unless there is an extension or the appeal is rejected and the inmate is notified of the reason for rejection on the Acknowledgment of Grievance Appeal/Rejection of Appeal form (see Attachment V). A decision or rejection of an appeal at this level is the end of the grievance process. The response shall be in written format.

7. If a grievance appealed is a duplicate of one previously appealed by the inmate with regard to the staff member named, the date of the incident, and the subject of the grievance, the inmate will be sent an Acknowledgment of Grievance Appeal/Rejection on Attachment V, and it will be noted as "Duplicate of _____" and the earlier grievance number will be filled in the blank; the duplicate will be returned to the inmate with the Attachment V.

8. The Grievance Extension Form will be used in cases where a longer period is required for a response or resolution of the problem. The inmate shall be notified by the responding authority, in writing, of the reason for the delay and its expected length on the Grievance Extension Form (see Attachment X). Time limits for responding will be extended automatically upon completion of the Grievance Extension Form (Attachment X), unless the inmate disagrees in writing to the extension. If the inmate does not agree to the extension, the inmate understands and agrees that, with that decision, no further action will be taken on the issue, and the grievance appeal will be returned to the inmate without a decision on its merit. By disagreeing with the extension, the inmate waives his or her right to have the grievance issue considered or exhausted. A second or subsequent

extension can be granted only with the approval of the Chief Deputy/
Deputy/Assistant Director.

9.  The entire grievance procedure should be completed within seventy-six
(76) working days unless a valid extension has been executed, or it can be
documented that unforeseen circumstances have occurred.

10. Release of the inmate from custody will normally terminate his or her
grievance, unless the parties are under court order to exhaust remedies or
the grievance highlights a problem that needs to be addressed at the
discretion of the Chief Deputy/Deputy/Assistant Director, or designee.

## H. Remedies

A grievance with merit will be afforded a reasonable range of meaningful
remedies.

1.  The responsible authority will review the conditions, policies or practices
grieved and take appropriate action.

2.  When a higher authority than the responding authority must authorize
appropriate action, the lower authority shall note its agreement or
disagreement with the inmate and transmit the completed grievance form
to the higher authority with notice to the inmate.

3.  The Division is to encourage the resolution of grievances found to have
merit involving property losses, confiscations or forfeitures through the
return of the property or replacement.

4.  Errors in record keeping may be corrected and action by the staff or
Classification Committees may be modified as appropriate.

5.  No grievance should be discussed between or among employees and
inmates except as necessary to obtain statements or to resolve the issues.

6.  No employee should respond to a grievance that is alleging misconduct by
that employee against the inmate unless (a) the inmate still has another
step in the grievance process to challenge the conduct, or (b) the inmate's
allegation was of indirect misconduct (conduct by omission). Where the
inmate is alleging direct misconduct (such as physical abuse) by the
employee, the employee shall not respond to the grievance.  No employee
may respond to a grievance that is alleging sexual harassment or sexual
abuse by that employee against the inmate.

I. Allegations of Abuse

> Any credible allegation of excessive force, sexual harassment or abuse, assault, or similar physical abuse of an inmate will be forwarded to the Internal Affairs Division for an investigation consistent with Arkansas Division of Correction policies.

J. Abuse of the Grievance Procedure

> Abuse of the grievance procedure by inmates will be dealt with in the following manner:

> 1. Excessive Use of the Procedure

>> a. Step One, Informal Resolutions, are limited to five (5) per seven-day period because excessive submissions may cause a delay in processing inmate grievances. The Warden or designee must maintain a record of five (5) submissions each seven-day period before rejecting one from that inmate. Only the first five (5) informal grievances, Step One, will require a response. The seven-day period will begin each Saturday and end on Friday. The submissions that exceed the limit will be marked as "No action necessary-exceeds weekly limit," followed by the staff person's name, signature and date verifying that person verified (1) that five (5) submissions under Step One had already been received from the inmate that seven-day period, and (2) it was not an emergency. A submission rejected under this section shall be returned to the inmate.

>> b. Inmates are only allowed to submit three formal grievances, Step Two, each seven-day period which begins each Saturday and ends on Friday. Only the first three formal grievances, Step Two, submitted each seven-day period by an inmate require an investigation and response. This limit includes both institutional and medical or mental health grievances. All other formal grievances will be logged and reviewed to determine if an emergency exists. If it is determined to be an emergency, action will be taken promptly to resolve the issue; however, a written response to the inmate is not required. If no emergency exists, the grievance will be logged out on the same day received, and it shall be written on the Unit Level Grievance Form "No action necessary-exceeds weekly limit," dated and signed. The original grievance will then be placed in the grievance file and no written response will be given to the inmate.

c.    If the formal grievance is regarding a health issue, but exceeds the inmate's limit for weekly submission, the grievance officer will note at the top of the grievance form "EXCEEDS WEEKLY LIMIT." The formal grievance will then be forwarded to the medical or mental health department to determine if an emergency exists. If the medical or mental health departments determine the grievance to be an emergency, the Health Services Administrator or Mental Health Supervisor will ensure that prompt action is taken to resolve the issue; however, a written response to the inmate is not required. If neither the medical nor mental health departments determine the grievance to be an emergency, it will be noted at the top of the grievance form, "not an emergency" beside the "EXCEEDS WEEKLY LIMIT" statement, dated and signed by the Health Services Administrator or Mental Health Supervisor and returned to the Grievance Officer for filing.

d.    If a formal grievance is a duplicate of one previously submitted by the inmate with regard to the staff member named, the date of the incident, and the subject of the grievance, the duplicate grievance will be logged into eOMIS, the inmate will be sent a Rejection of Grievance on Attachment II, and note at the top of the grievance form as "Duplicate of _____" and the earlier grievance number will be filled in the blank; the duplicate will be returned to the inmate with the Attachment II and counted as one of the inmate's weekly submissions.

e.    If the duplicate grievance is regarding a health issue, the grievance officer will forward the logged grievance and Rejection of Grievance Attachment II to medical or mental health to determine if a response is necessary or an emergency exists. If necessary, the Health Services Administrator or Mental Health Supervisor will ensure that prompt action is taken to resolve the issue, and if not, the medial or mental health staff will note at the top, "no response necessary on duplicate," date and sign it, and return both the grievance and Rejection of Grievance Attachment II to the inmate.

2.  Frivolous and Vexatious (Provoking or Harassing) Use of the Procedure

a.    A frivolous or vexatious submission at any step will be logged and returned to the inmate with a Rejection form (Attachment II or Attachment V) and counted as one of the inmate's weekly submissions.

b.    A submission is frivolous when it is clearly insufficient on its face to allege an issue or concern and is readily recognizable as devoid of merit and insufficient for resolution or appeal.

       c.   A submission is vexatious when it merely agitates, provokes, harasses or irritates by petty provocation and is not designed to lead to any practical result, resolution, or appeal.

3. Use of Threats

An inmate who use the grievance procedure to direct threats at another will have the grievance rejected and copies will be referred to Internal Affairs to consider for referral for prosecution.

4. Malicious Use of the Procedure

Any inmate who knowingly makes false statements in a submission for the purpose of harming another person will have the grievance rejected.

K. Reprisals or Retaliation

1. No inmate shall suffer any threat or action based on his or her appropriate use of, or participation in, the grievance procedure. If an inmate believes he/she has been retaliated against for the use of the grievance procedure, he/she must contact the Warden/Center Supervisor or in a case of alleged retaliation by the Warden/Center Supervisor, the inmate shall contact the appropriate Chief Deputy/Deputy/Assistant Director. Regardless, the inmate must exhaust their remedies through the grievance process.

2. Any reprisal or retaliation by staff is absolutely prohibited and will be dealt with in accordance with the appropriate policy regarding employee conduct and discipline. All personnel shall receive written and oral notice that formal and/or informal reprisals will not be tolerated.

The Training Academy has implemented a training program regarding inmate problem resolutions and complaints. The training is mandatory for all staff involved in the inmate grievance process.

3. Once an inmate initiates the grievance process, the process shall be followed through all stages without interference by administrators or employees of the division. Anytime an inmate voluntarily decides to withdraw a grievance, he or she must submit a Grievance Waiver Form (see Attachment IX). The appropriate staff will verify receipt of the waiver in writing.

4. If reprisal or retaliation is suspected or determined after the unit/center investigation, the grievance shall be forwarded to Internal Affairs for further review with all relevant documentation.

L. Records

    1.    Each designated administrator at each level of response shall collect and systematically maintain records regarding the filing and disposition of grievances. These records will be maintained pursuant to the Division's record retention policy in either hard copy or in a retrievable form, as well as in the inmate's electronic record, and shall be available for inspection as required by law.

    2.    At a minimum, such records shall include aggregate information regarding the numbers, types and disposition of grievances, as well as individual records of the dates and reasons for each disposition at the formal grievance (Step Two) and appeal stages of the procedure and shall be logged in the electronic offender records system. Such records shall be preserved in accordance with the policy regarding records retention.

    3.    Records regarding the participation of an individual in grievance proceedings shall not be available for review by any inmate other than the grievant.

    4.    Grievance records, including statements and testimony provided during the process, are confidential and are not available to inmates. Division personnel other than those directly involved in the grievance process may not have access to the information, unless the person's job requires access to such records.

    5.    Except as otherwise provided by Arkansas law, grievance records will not be available to non-departmental personnel other than those representing the Division of Correction or providing services such as imaging or destruction of records under an agreement with the Division of Correction.

    6.    No entries concerning grievances, or an inmate's participation in a grievance proceeding through testimony or submission of evidence, shall be recorded in the inmate's paper institutional file.

    7.    Only those positions authorized by the appropriate Chief Deputy/Deputy/Assistant Director will have access to the Grievance Tracking Program.

M.    Evaluation

    1.    Monthly, quarterly and annual reports may be generated from the tracking system.

    2.    Records of staff efforts at problem solving may be considered by supervisors evaluating the performance of staff.

STATE OF ARKANSAS }
County of HOT SPrings }

## AFFIDAVIT

I, _James E. Smith # 121300_ After first being duly SWORN, do here by Swear depose and State that; { A wrong had been Committed § And ADC and ADC State officials Cause that wrong §§ And ADC State Officials Cause harm to the Plaintiff's. _The fact is that on 4/07/2021, ADC State officials Committed Fraud and theft of Property on 4/07/2021. On 4/07/2021, ADC State officials Illegally enter and unlawfully took funds out of the Plaintiff's Trust funds banking Account. For Review of Funds wrongfully withdrawed from Plaintiff's banking Account on 04/07/2021 - See Exhibits In Support of Civil Suit • Exhibits {1} and {2}. On 7/30/2021, **Warden Byers**, had Claim that because of **ACT 1110 OF 2021**, that the ACT had gave ADC State officials the rights to enter and take funds from the Plaintiff's Trust funds Account; See Exhibits {7}. However "the fact is that **Warden Byers**, Ignored and had refuse to acknowledge the date to when **ACT-1110 OF 2021**, had became enacted by the General Assembly of the State of Arkansas on May 3, 2021. See_

Exhibit {3} Reveals that April Gibson, the inmate grievance Coordinator/Center office provided Warden Byers, with a Copy of the ACT-1110 of 2021, and Warden Byers, then Provide the plaintiff's with a Copy of the ACT-1110 of 2021, that Was enacted on - May 3-2021. April Gibson, M. Grisham, Warden Byers and Marshall Dale D. Reed, all had Tryed to Convince me the{Plaintiff's} That it Was legal for ADC and it's ADC State officials to use ACT-1110 of 2021-on 4/7/2021, to enter and take Funds from the plaintiff's trust fund banking Account. However" Exhibit {3} Exhibit {7} Exhibit {4} All Reveals that it Was Unlawful for ADC State officials to use ACT-1110 of 2021 on 04/07/2021. Because ACT-1110 of 2021 Was Not enacted Not until May 3, 2021. Therefore ADC-State officials Unlawful use of Act-1110 of 2021-on 04/07/2021 do Constitute ADC and ADC State officials to have Committed Fraud and theft of Property. Act-1110 of 2021 Was Not law on 04/07/2021.

Exhibit {5} reveals that Warden Byers, Stated that the funds that ADC State officials took from the Plaintiff's on 4/7/2021, Was due to an allege Court order. On 9/13/2021, Warden Byers Stated that A Court had issue A Court order for ADC to Place and enforce liens on the Plaintiff's Trust-

2

funds banking Account for the amount of $799.61 for ADC State Postage Charges fees and for $215.56 for ADC.State Legal Copier fees. Therefore the Court order to Place a lien on the plaintiff's account would have to have been issued by a Court either before 04/07/2021 or on 04/07/2021 - in order for ADC. Not to have Committed Fraud and Theft of property. Therefore because -- warden Byers, had Stated that ADC State officials had use Act-1110-of 2021 to enter and take Funds out of the plaintiff's Account on 04/07/2021; And it was Expose to the fact that ADC use of ACT-111 of 2021, on 04/07/2021, would Constitute Fraud and theft of property: warden Byers, then turn around and Stated on 9/13/2021, that A Court gave a Court order for ADC to Place and enforce a lien on the Plaintiff's Trust fund Account on 4/7/2021, for ADC State postage Charge Fees and for State legal Copies fees. Therefore the fact is that because Warden Byers, had given Two different Reason. To What Authority had given ADC.State. officials and ADC Right To enter and take funds out of the Plaintiff's Trust fund banking Account. Then the Plaintiff's Prays for this Court to Compel ADC to produce the allege Court order and present that Court order to the plaintiff's and to this Court.

3

Exhibit {9} Reveals that ADC-Inmate liens=1644=Paragraphs {11} and {12}

violates State law; The order Granting leave to Proceed In Forma Pauperis

Exhibit {8} Reveals that the Plaintiff's Legally do not owe ADC any State

Postage Charge Fees and do not owe ADC any Legal Copies fees. See Exhibit

{8} for the order granting Leave to Proceed In FoRmA Pauperis. The order

Granting Leave to proceed In forma pauperis clearly Reveals that No: Court

have given a Court order to ADC to Place and Enforce a lien on the Plaintiff's

Trust Fund Account. Therefore the plaintiff's states and allege that the

Statements and facts Named within this Affidavit and within

Plaintiff's Civil Suit is True and accurate to the best of my the Plaintiff's

knowledge and is Correct. Wherefore the plaintiff's states that because of

the Emotional Distress, Financial Stress, Mental Anguish, mental Stress

and because of the Embarrassment that ADC State officials has cause upon the

Plaintiff's the Plaintiff's does pray for this Court to grant the Plaintiff's

Law Suit and all other equitable Relief.

James E. Smith #121300

4

STATE OF ARKANSAS        )

                                      ) SS

COUNTY OF _Jefferson_  )

        SUBSCRIBED AND SWORN TO BEFORE ME, a Notary Public, on this _13th_

day of _November_, 20_24_.

_Shelia R Johnson_
                                  **NOTARY PUBLIC**

**My Commission Expires:** _09/05/2028_

SHELIA R JOHNSON
NOTARY PUBLIC-STATE OF ARKANSAS
JEFFERSON COUNTY
My Commission Expires 09-05-2028
Commission # 12706182

_James E. Smith_
Petitioner:

FIRST-CLASS MAIL

$003.56⁰

NEOPOST
11/16/2021
US POSTAGE

ZIP 72204
041W11145988

James E. Smith #121300
Ouachita River Unit
P.O. Box 1630
Malvern AR, 72104

UNITED STATES DISTRICT Court
OFFICE OF THE CLERK
30 S 6th STREET, Room 1038
FORT SMITH, ARKANSAS 72901-2

Legal mail;
This is mailed out
72904627