**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**JAMES ELWOOD SMITH**                                                      **PLAINTIFF**
**ADC #121300**

**v.**                                        **Case No. 4:22-cv-00116-LPR**

**PAULA SETTLES,** *et al.*                                                 **DEFENDANTS**

### <u>ORDER</u>

Plaintiff James Elwood Smith is incarcerated at the Ouachita River Unit of the Arkansas

Division of Correction (ADC).  Mr. Smith filed his *pro se* Complaint and Motion for Leave to

Proceed *In Forma Pauperis* in the Western District of Arkansas on November 19, 2021.[1]  Mr.

Smith's IFP Motion was granted the same day.[2]  On December 10, 2021, he filed an Amended

Complaint, which is now the operative Complaint in his case.[3]  Mr. Smith's claims concern the

ADC's confiscation of his federal COVID-19 relief stimulus funds.[4]

On February 8, 2022, Mr. Smith's case was transferred to this Court.[5]  Two days later, his

case was consolidated with several other similar cases in the master docket in *Hayes v. Rutledge*.[6]

Before Mr. Smith's case was transferred and consolidated, this Court had administratively stayed

all of the consolidated member cases pending resolution of three representative test cases.[7]  Upon

consolidation, Mr. Smith's case was also stayed.[8]  Because Mr. Smith's case was stayed, the Court

---

[1] Compl. (Doc. 1); First IFP Mot. (Doc. 2).

[2] Order (Doc. 4).

[3] Am. Compl. (Doc. 7).

[4] *Id.*

[5] Order (Doc. 8).

[6] Order (Doc. 10).

[7] *Hayes v. Rutledge* , No. 4:21-cv-00347 (Doc. 254) [*hereinafter Hayes Master Docket*].

[8] *Id.* (staying all cases and motions "currently pending . . . or that are in the future transferred to or placed on the Master Docket . . . pending the resolution of" three test cases).

did not screen his Amended Complaint in accordance with the mandates of the Prison Litigation Reform Act (PLRA).[9]

On March 16, 2022, the Court entered a final Order and Judgment in the three test cases.[10] The same day, the Court administratively terminated each of the member cases, including this one.[11]  Mr. Smith was advised that he could move to reopen his case after ninety days to adjudicate any claims he believed were still live before the Court.  On July 7, 2022, Mr. Smith moved to reopen his case, and he submitted a new IFP Motion.[12]

In his Motion to Reopen, Mr. Smith argues that he maintains a live claim in this case because ADC officials unlawfully confiscated his stimulus funds prior to the enactment of Act 1110, then attempted to "cover up [their] wrongdoing by using Act 1110" as an excuse for the "theft."[13]  He asserts that his stimulus funds have not been returned to him and that the confiscation constitutes a violation of his constitutional rights.[14]

The Court GRANTS in part Mr. Smith's Motion to Reopen.  Mr. Smith's case is reopened. The Court DENIES Mr. Smith's new IFP Motion as moot, because his original IFP Motion was already granted.  Moreover, the payment of a second filing fee is not necessary to proceed with the screening of this case.  The Court must now screen Mr. Smith's Amended Complaint.

---

[9] 28 U.S.C. §§ 1915A, 1915(e)(2)(B).

[10] *Hayes Master Docket* (Docs. 422 & 423).

[11] Order (Doc. 11).

[12] Mot. to Reopen (Doc. 14); Second IFP Mot. (Doc. 15).

[13] Mot. to Reopen (Doc. 14) at 2, 4.

[14] *Id*. at 4.

## I. Screening

Before docketing a complaint, or as soon as practicable after docketing, the Court must review the complaint to identify cognizable claims or dismiss the complaint, or any portion of the complaint, if it: (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief against a defendant who is immune from such relief.[15] Although a complaint requires only a short and plain statement of the claim showing that the pleader is entitled to relief, the factual allegations must be sufficient to raise the right to relief above a speculative level.[16] A *pro se* complaint is construed liberally, but it must contain enough facts to state a claim to relief that is plausible on its face, not merely conceivable.[17]

## II. Mr. Smith's Claims

Mr. Smith sued (1) Administrative Review Grievance Officer Barbara Holliman, (2) Ouachita River Unit Warden Jared Byers, (3) Ouachita River Unit Sergeant Paula Settles, (4) Chief Financial Officer of ADC Jeffery Jerry, (5) Director of ADC Dexter Payne, and (6) Chief Deputy Director of ADC Marshall Dale Reed.[18] Mr. Smith sued all Defendants in their personal and official capacities.[19] He seeks compensatory and punitive damages, as well as injunctive relief.[20]

### A. Claims Regarding the Withdrawal of Stimulus Funds

Mr. Smith alleges that, on April 7, 2021, Defendant Jeffery Jerry withdrew stimulus funds from Mr. Smith's trust fund banking account to pay off postage and copier fees, pursuant either to

---

[15] 28 U.S.C. §§ 1915A, 1915(e)(2)(B).

[16] *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citation omitted).

[17] *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

[18] Pl.'s Am. Compl. (Doc. 7) at 1.

[19] *Id*. at 6, 8, 9, 11, 13, 14.

[20] *Id*. at 15.

Act 1110 (which did not go into effect until May 3, 2021) or to the ADC's lien policy described in Administrative Directive ("AD") 16-44.[21]  Mr. Smith argues that the confiscation violated his due process rights regardless of the authority used to justify the withdrawal.[22]  Mr. Smith also alleges that Defendant Dexter Payne was aware that Act 1110 was not in effect on April 7, 2021, and "that no court gave an order for ADC to place or enforce a lien on the [account] for state postage fees and for state legal copies fees."[23]  He alleges that Defendant Payne failed to properly "correct and discipline officials" under his supervision for their "wrongdoings" regarding the withdrawal of the funds.[24]

Mr. Smith's claims that seek to invalidate Act 1110, or prohibit the enforcement of Act 1110, must be dismissed.  Mr. Smith alleges that the confiscation of his stimulus funds occurred before Act 1110 was enacted.  That means that Act 1110 (or the enforcement thereof) cannot be responsible for the confiscation of Mr. Smith's stimulus funds.

Mr. Smith has sufficiently challenged the legality of AD 16-44, the legality of enforcing AD 16-44, as well as (more generally) the confiscation of his stimulus funds.[25]  The Court therefore finds that Mr. Smith has stated a claim (at least for purposes of screening) against Defendant Jerry for a violation of his Fourteenth Amendment procedural due process rights.[26]

---

[21] *Id*. at 5–6.  Mr. Smith attached AD 16-44 as an exhibit to his original complaint (Doc. 1), but he did not attach it to his Amended Complaint (Doc. 7).  The specific provisions of AD 16-44 that Mr. Smith challenges are found in Section II.A, paragraphs 11 and 12

[22] Pl.'s Am. Compl. (Doc. 7) at 14.

[23] *Id*.

[24] *Id*.

[25] This Court has previously held that confiscating a prisoner's stimulus funds to pay off court fines, fees, costs, and restitution is constitutional.  *Hayes Master Docket* (Doc. 422).  But that ruling explicitly excluded from its scope funds confiscated pursuant to AD 16-44.  *Id*. at 5 n.24.

[26] Mr. Smith alleges violations of his due process rights under both the Fifth and Fourteenth Amendments.  "The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"  *Dusenbury v. United States*, 534 U.S. 161, 167 (2002).  Because Mr. Smith sued no federal actor, his Fifth Amendment due process claim fails.  With respect to his Fourteenth Amendment due process claim, the procedural aspect of that claim survives.

## B.  Claims Regarding the Grievance Process

Mr. Smith alleges that, after he filed a grievance regarding the stimulus funds, Defendants Settles, Holliman, Byers, and Reed delayed or otherwise interfered with the grievance process in order to cover up the ADC's wrongful conduct of withdrawing the funds.[27]  He argues that the Defendants' conduct violated ADC policy and his constitutional right to due process, resulting in cruel and unusual punishment.[28]  He also alleges that the Defendants retaliated against him based on his use of the grievance procedure.[29]

The claims based on a violation of the grievance policy itself are out.  A violation of prison policy alone does not give rise to § 1983 liability.[30]  The Eighth Circuit has made clear that prisoners do not have a constitutional right to a prison grievance procedure and that a prison official's failure to properly process a grievance, standing alone, is not actionable under § 1983: "A prison grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates.  Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment."[31]  The Defendants' alleged conduct cannot support Mr. Smith's policy-based claims or constitutional claims.  For this reason,

---

But, to the extent Mr. Smith brings a substantive due process challenge, that claim fails for the reasons explained in the Court's order granting preliminary injunction in the stimulus payment cases.  *See Hayes Master Docket* (Doc. 79).

One further point is worth mentioning.  The Court concludes that the procedural due process claim survives screening without the benefit of adversarial briefing.  This conclusion in no way prejudges whether the claim would survive a motion to dismiss.

[27] Pl.'s Am. Compl. (Doc. 7) at 7–13.

[28] *Id.*

[29] *Id.*

[30] *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam).

[31] *Id.*

those claims against Defendants Settles, Holliman, Byers, and Reed will be dismissed without prejudice.[32]

Mr. Smith's grievance-related retaliation claims (which invoke the First Amendment) also fail. The filing of a prison grievance is protected First Amendment activity,[33] and "[c]onduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason."[34] But to demonstrate retaliation, Mr. Smith must show that Defendants took some adverse action against him.[35] Mr. Smith fails to allege any such adverse action.

Mr. Smith's retaliation claim is premised entirely on the idea that Defendants Settles, Holliman, Byers, and Reed purposely delayed (or outright prevented) the resolution of Mr. Smith's grievance in an attempt to "prevent the expos[ure] of [Defendant Jerry's] unlawful entry and taking of funds from" his account, and to "cover up ADC State officials['] theft of property and fraud."[36] Purposely delaying (or outright preventing) resolution of a grievance could possibly be an adverse action if it had some kind of negative impact on Mr. Smith or his ability to vindicate his legal rights. But there is no such allegation in the Amended Complaint, nor any reason to think that would occur. Even if the state prison officials outright ignored his grievance, Mr. Smith would

---

[32] To the extent Mr. Smith attempts to state a claim under the Eighth Amendment, his allegations that ADC officials failed to address his grievances in a timely manner are insufficient to state a claim for cruel and unusual punishment. To sustain such a claim, Mr. Smith would need to show "'unnecessary and wanton infliction of pain,' as well as a deprivation 'denying the minimal civilized measure of life's necessities.'" *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Mr. Smith "must also show that the defendants were deliberately indifferent to his health or safety, and that they acted maliciously for the purpose of causing him harm." *Id.* (internal citations omitted). Mr. Smith has not alleged that prison officials disregarded some threat to his health or safety, or that they acted with the intent to cause him harm. Thus, to the extent that he attempts to state an Eighth Amendment claim based on Defendants' noncompliance with the grievance procedure, the claim is dismissed without prejudice.

[33] *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007).

[34] *Nei v. Dooley*, 372 F.3d 1003, 1007 (8th Cir. 2004).

[35] *Spencer v. Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir. 2013).

[36] Pl.'s Am. Compl. (Doc. 7) at 7.

still have access to (and potential recourse through) the courts.[37]  The allegations currently pled in the Amended Complaint are insufficient to state a claim for retaliation.

### C.  Supervisory Liability Claims Against Defendant Payne

Mr. Smith has alleged two supervisory liability claims against Defendant Payne.  Mr. Smith's first supervisory liability claim arises in regard to the (allegedly wrongful) withdrawal of his stimulus funds.  Mr. Smith's second supervisory liability claim against Defendant Payne relates to Mr. Smith's allegations that prison officials purposely delayed resolution of his grievance.

Supervisory liability in the § 1983 context is limited, as "[a] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity."[38]  Rather, to maintain a claim against a supervisor, the plaintiff must allege that the supervisor was personally involved in the constitutional violation, or that the supervisor acted with "deliberate indifference" toward the violation in failing to take corrective action.[39]  In short:  "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what he or she might see."[40]  To establish a claim of failure-to-supervise, Mr. Smith must state facts that, if true, show that Defendant Payne:  "(1) received notice of a pattern of unconstitutional acts committed by subordinates; (2) demonstrated deliberate indifference to or tacit authorization of the offensive acts; (3) failed to take sufficient remedial action; and (4) that such failure proximately caused the injury."[41]

---

[37] *Hammett v. Cofield*, 681 F.3d 945, 948 (8th Cir. 2012) ("[I]nmates cannot be held to the exhaustion requirement of the PLRA when prison officials have prevented them from exhausting their administrative remedies.") (quoting *Lyon v. Vande Krol*, 305 F.3d 806, 808 (8th Cir. 2002) (en banc)).

[38] *White v. Holmes*, 21 F.3d 277, 279 (8th Cir. 1994).

[39] *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995); *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993).

[40] *Boyd*, 47 F.3d at 968 (quoting *Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir. 1994)) (brackets omitted).

[41] *Otey v. Marshall*, 121 F.3d 1150, 1156 (8th Cir. 1997).

The supervisory liability claim based on the withdrawal of stimulus funds fails because Mr. Smith has not alleged that Defendant Payne was aware of the withdrawal of funds at the time it occurred, or that he was aware of a pattern of such withdrawals prior to April 7, 2021. And Defendant Payne's alleged after-the-fact knowledge is insufficient to support a failure-to-supervise claim. Accordingly, this claim will be dismissed.

The supervisory liability claim based on the grievance process (including alleged retaliation) fails because Mr. Smith has not alleged facts showing that Defendant Payne was aware of the other Defendants' interference with the grievance procedure until after it had occurred. Instead, he alleges that Defendant Payne's "failure to correct and discipline" the officials for their interference with the grievance procedure made him "an accessory to state official wrongdoings after the fact."[42] This claim will be dismissed, too.

### III. Conclusion

IT IS THEREFORE ORDERED that:

1.     Mr. Smith's Fourteenth Amendment procedural due process claim against Defendant Jeffery Jerry based on AD 16-44, the enforcement of AD 16-144, or (more generally) the confiscation of his stimulus funds survives screening and will be served on Defendant Jeffery Jerry.

2.     All other claims and all other Defendants are DISMISSED without prejudice.

3.     The Clerk of the Court shall prepare a summons for Defendant Jeffery Jerry. The United States Marshal shall serve a copy of the Amended Complaint (Doc. 7), Summons, and this Order on Defendant Jerry, without prepayment of fees and costs or security thereof. Service on

---

[42] Pl.'s Am. Compl. (Doc. 7) at 14.

Defendant Jerry should be attempted through the ADC Compliance Office, P.O. Box 20550, Pine Bluff, Arkansas 71612.[43]

IT IS SO ORDERED this 27th day of July 2022.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[43] Mr. Smith is proceeding *pro se*, but he must still follow the applicable Federal Rules of Civil Procedure and relevant Local Rules. Local Rule 5.5(c)(2) of the Eastern and Western Districts of Arkansas is particularly relevant to plaintiffs proceeding *pro se*. Local Rule 5.5(c)(2) provides:

> It is the duty of any party not represented by counsel to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. A party appearing for himself/herself shall sign his/her pleadings and state his/her address, zip code, and telephone number. If any communication from the Court to a *pro se* plaintiff is not responded to within thirty (30) days, the case may be dismissed without prejudice. Any party proceeding *pro se* shall be expected to be familiar with and follow the Federal Rules of Civil Procedure.